IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| AMERICAN ELECTRIC CO., LLC, | ) | CIV. NO. 13-00471 BMK |
| | ) | CIV. NO. 14-00020 BMK |
| Plaintiff, | ) | |
| | ) | (CONSOLIDATED CASES) |
| vs. | ) | |
| | ) | |
| PARSONS RCI, INC., | ) | ORDER DENYING DEFENDANT |
| | ) | PARSONS RCI, INC.'S MOTION |
| Defendant. | ) | FOR PARTIAL SUMMARY |
| | ) | JUDGMENT AGAINST COVANTA |
| | ) | HONOLULU RESOURCE |
| COVANTA HONOLULU | ) | RECOVERY VENTURE ON ITS |
| RESOURCE RECOVERY | ) | CLAIMS AND COUNTERCLAIMS |
| VENTURE, | ) | FOR LIQUIDATED DAMAGES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PARSONS RCI, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ORDER DENYING DEFENDANT PARSONS RCI, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AGAINST COVANTA HONOLULU
RESOURCE RECOVERY VENTURE ON ITS CLAIMS AND
<u>COUNTERCLAIMS FOR LIQUIDATED DAMAGES</u>

Before the Court is Defendant/Third-Party Plaintiff Parsons RCI,

Inc.'s ("Parsons") Motion for Partial Summary Judgment against Covanta

Honolulu Resource Recovery Venture on its Claims and Counterclaims for

Liquidated Damages (the "Motion"). (Doc. no. 153.) Parsons seeks partial summary judgment against Covanta Honolulu Resource Recovery Venture ("Covanta") on the grounds that Covanta is not entitled to liquidated damages, because the claims and counterclaims for damages are not supported by Hawaii law and are factually unsupported. Additionally, Parsons seeks summary judgment on its counterclaim against Covanta for breach of contract, as Covanta has allegedly conceded that it has failed to pay Parsons for change-order work that the latter performed.

The Motion came on for hearing before the Court on February 11, 2015.[1] After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, the Court hereby DENIES the Motion.

## BACKGROUND

## I. FACTUAL BACKGROUND

The facts of this case are well known to the Court and the parties. (See Order (1) Denying Covanta Honolulu Resource Recovery Venture's Motion

---

[1] Concurrent with the hearing on the present Motion, the Court also heard arguments on (1) Covanta's Motion for Partial Summary Judgment re Disallowed Claims, (2) Covanta's Motion for Partial Summary Judgment re Parsons, RCI, Inc.'s Duty to Defend and, With Respect to the Disallowed Claims, to Indemnify, and (3) Parsons's Renewed Motion for Leave to File First Amended and Consolidated Third-Party Complaint and Counterclaim. (Doc. nos. 113, 122, and 174.) The Court disposes of those motions by separate orders.

for Partial Summary Judgment re Disallowed Claims (Doc. no. 113) and (2)

Denying Covanta Honolulu Resource Recovery Venture's Motion for Partial

Summary Judgment re Parsons, RCI, Inc.'s Duty to Defend and, With Respect to

the Disallowed Claims, to Indemnify (Doc. No. 122).)  Accordingly, the Court

only addresses the facts pertinent to the present Motion.

   A.   <u>Liquidated Damages Provisions in Article 3.3 and Change Order 28</u>

       Article 3.3 of the General Contract ("Contract") between Covanta and

Parsons provides for an award of liquidated damages to Covanta if Parsons fails to

meet certain milestones.[2]  (Covanta's Concise Statement of Facts ("CSF"), Exh. B,

---

[2] The relevant portions of Article 3.3 state:

3.3.2  Contractor shall achieve Mechanical Completion no later than
the Scheduled Mechanical Completion Date and Construction
Completion no later than the Scheduled Construction Completion
Date.  Contractor acknowledges that any delay in the achievement of
Mechanical Completion or Construction Completion, which is not
excused under this Contract, will result in substantial loss and
significant damage to Covanta, the extent of which will be difficult to
calculate or quantify with any reasonable degree of precision.
Therefore, the Parties have agreed to quantify and to agree upon such
damages in advance.

3.3.3  In the event Contractor fails to achieve (a) Mechanical
Completion by the Scheduled Mechanical Completion Date or (b)
Construction Completion by the Scheduled Construction Completion
Date, in either case, Contractor agrees to pay Covanta as liquidated
damages (and not as a penalty nor subject to any proof of such loss)

Contract art. 3.3.)  Article 3.3 was subsequently modified in part by Change Order

28.  Change Order 28 provides that:

> 3.3.3  In the event Contractor fails to achieve (a) the Mechanical Completion Milestone by the Scheduled Mechanical Milestones Completion Date or (b) Construction Completion by the Scheduled Construction Completion Date, in either case, ***Contractor agrees to pay Covanta as liquidated damages (and not as a penalty nor subject to any proof of such loss) the amounts set forth in Exhibit K-1***; provided, however that the aggregate amount of liquidated damages payable hereunder shall never exceed the sum of Twenty-Five Thousand Dollars ($25,000.00) per calendar day. . . .
>
> 3.3.4  The Parties agree that the words "Readiness for First Refuse Fire prior to April 21, 2012" shall be substituted for the words "Mechanical Completion prior to March 4, 2012" in Change Order No. 9 to this Contract.  Readiness for First Fire is defined in Exhibit

---

> the sum of Twenty Thousand dollars ($20,000.00) ("Delay Liquidated Damages"), for each calendar day that Contractor is delayed in achieving Mechanical Completion or Construction Completion . . . .
>
> 3.3.4 The Parties agree that the amount of liquidated damages provided in this Contract is neither a penalty nor a forfeiture, and Contractor expressly waives its right to assert or plead that the liquidated damages provided for in this Contract are a penalty, forfeiture, or are unconscionable, unreasonable, disproportionate in amount, capable of being calculated and proven in a precise amount, otherwise void or unenforceable, or that Covanta has not incurred or will not incur actual damages as a result of the Contractor's failure to complete the Work on time.

(Covanta's CSF, Exh. B, Contract art. 3.3.)

K-1. Contractor further agrees that it will in no event request or claim that it is entitled to an extension or modification of the April 21, 2012 date in order to obtain a bonus under Change Order No. 9.

3.3.5 The Parties agree that the amount of liquidated damages provided in this Contract *is neither a penalty nor a forfeiture, and Contractor expressly waives its right to assert or plead that the liquidated damages provided for in this Contract are a penalty, forfeiture, or are* unconscionable, unreasonable, disproportionate in amount, capable of being calculated and proven in a precise amount*, otherwise void or unenforceable, or that Covanta has not incurred or will not incur actual damages* as a result of the Contractor's failure to complete the Work on time.

(Covanta's CSF, Exh. C, Change Order 28 (emphasis added).)

Exhibit K-1 to Change Order 28 mandated a $20,000-per-calendar-day penalty for Parsons's failure to meet the stated milestones. Exhibit K-1 sets April 21, 2012 as the milestone date for the Readiness for First Refuse Fire, and the Construction Completion Date is designated as 30 days after the First Refuse Fire. (Id. at Exh. K-1.)

B.    Parsons's Alleged Failure to Meet the Milestones

In its First Amended Complaint against Parsons[3], Covanta alleges that

---

[3] Covanta's First Amended Complaint, filed August 15, 2014 (doc. no. 102), is substantially similar to its First Amended Counterclaim Against Parsons RCI, Inc., filed August 15, 2014 (doc. no. 103).

Parsons failed to meet both the Readiness for First Refuse Fire milestone, as well as the Construction Completion milestone. (Covanta's First Am. Compl. ¶¶ 52-57.) Covanta claims that, even though it extended the Readiness for First Refuse Fire milestone deadline from April 21, 2012 to May 5, 2012, Parsons did not meet the Readiness for First Refuse Fire until approximately May 31, 2012.[4] (Mem. in Opp'n at 6, 9.) Covanta further argues that, even though Parsons was required to meet the Construction Completion milestone deadline by July 1, 2012[5], it failed to do so, and Construction Completion did not occur until as late as February 15, 2013. (Mem. in Opp'n at 9.) Thus, Covanta claims that Parsons was 26-days late in meeting the Readiness for First Refuse Fire milestone, and approximately seven-months late in meeting the Construction Completion milestone.[6]

---

[4] Covanta's Amended Complaint states that Parsons completed the Readiness for First Refuse Fire milestone on or around May 25, 2012, but its memorandum in opposition to the Motion refers to the parties' respective expert reports and pegs the operative date at May 31, 2012. (Mem. in Opp'n at 9; Covanta's CSF ¶ 30.)

[5] Covanta states that it is undisputed that the First Fire occurred on June 1, 2012. Thereafter, under Change Order 28, Parsons had 30 days to achieve Construction Completion. (Mem. in Opp'n at 9.)

[6] The First Amended Complaint alleges that Construction Completion occurred no earlier than January 2013, but its memorandum in opposition to the Motion states that there were outstanding issues precluding a determination of

Under the terms of Change Order 28, then, it appears that Covanta could be owed approximately $520,000 for Parsons's failure to meet the Readiness for First Fire milestone, and up to approximately $4.2 million for Parsons's failure to meet the Construction Completion milestone.

C.    Covanta's Retroactive Bonus from the City & County of Honolulu

Parsons alleges that Covanta invoiced Project owner City and County of Honolulu (the "City and County"), claiming an early completion bonus in the amount of $1,569,879.98.  The bonus was supposedly premised on the City and County's acceptance of the Project on August 4, 2012.  (Mot. at 11.)  However, Covanta points out that the City and County retroactively accepted the Project only after Covanta agreed to undertake certain modifications at its own expense.  (Mem. in Opp'n at 10-13.)  Covanta states that the City and County actually rejected Covanta's Acceptance Test on July 23, 2012.  (Id. at 11.)  Covanta claims that, in order for it to meet the City and County's retroactive Acceptance Date, it expended over $2 million fixing work performed by Parsons.  (Id. at 13.)

D.    Covanta's Alleged Breach of Contract

Parsons claims that Article 7 of the Contract requires Covanta to issue

Construction Completion until as late as February 15, 2013.  (Mem. in Opp'n at 9; Covanta's CSF ¶ 35.)

a change order with any directive that will cause a material increase or decrease in the Contract price or time. (Mot. at 12.) Even if the parties disagreed on the change order, Parsons was to continue with the directed work, and Covanta was to compensate Parsons for the changed work. (Id.) Specifically, Article 7.6 provides that Covanta will continue to work on the Project:

> notwithstanding that a Change Order has not been issued or that agreement has not been reached on the effects, if any, of a proposed change to the Contract Price or Completion date. Although it is the intent of the Parties to agree on such matters in advance of the changed Work being performed, in the event Covanta and Contractor are unable to agree on the amount of any cost or credit to Covanta resulting from a change in the Work or if the work constitutes a change, the Contractor shall promptly proceed with, and diligently prosecute, the changed Work and the cost or credit to Covanta resulting therefrom shall be compensated on a cost basis pending resolution of Contractor's proposed Change Order, or at Covanta's option, resolved under Article 11.5; provided, however, that Covanta shall timely pay Contractor for all changed Work costs not subject to dispute. . . .

(Contract art. 7.6.)

Parsons claims that Covanta has not paid it for 33 Change Order Requests ("COR") with an approximate value of $4,581,558.00. (Mot. at 14.)

## STANDARD

Summary judgment is appropriate only where the Court determines

that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(c). In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000). However, the non-moving party cannot rely upon conclusory allegations unsupported by factual data to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

In deciding a motion for summary judgment, the Court's function is not to try issues of fact, but rather to determine whether there are issues to be tried. Anderson, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

DISCUSSION

I.    LIQUIDATED DAMAGES

A.    The Court's Interpretation of the Contract

As an initial matter, the Court addresses Covanta's contention that

Parsons waived the right to argue that the liquidated damages provision in Article

3.3, as modified by Change Order 28, is unenforceable.  Covanta points to Article

3.3.5 of Change Order 28, which provides that:

> The Parties agree that the amount of liquidated damages
> provided in this Contract is neither a penalty nor a
> forfeiture, and ***Contractor expressly waives its right to
> assert or plead that the liquidated damages provided for
> in this Contract are a penalty, forfeiture, or are
> unconscionable, unreasonable, disproportionate in
> amount, capable of being calculated and proven in a
> precise amount, otherwise void or unenforceable***, or that
> Covanta has not incurred or will not incur actual damages
> as a result of the Contractor's failure to complete the
> Work on time.

(Change Order 28, art. 3.3.5 (emphasis added).)  It argues that, by express

statement or agreement, Parsons agreed to waive its right to challenge the

enforceability of the liquidated damages provision.  (Mem. in Opp'n at 16.)

Covanta argues that the cited provision is not ambiguous, and the Court must

therefore interpret the terms of the provision by their plain and ordinary meaning.

(Id. (citing Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Hawai'i 487, 494-95, 78

P.3d 23, 30-31 (2003)).)

      The Court disagrees with Covanta's analysis and declines to divest

itself of the ability to review the reasonableness and enforceability of the liquidated

damages clause.  Under Covanta's logic, a provision in a contract providing that

the parties agree that its terms are not ambiguous, unconscionable, or against public policy could completely circumvent judicial scrutiny as to those issues. Rather, there is no doubt that, when looking at the particular circumstances of a given case, the interpretation of a contractual provision in the context of that particular situation is a question of law for the Court's consideration. See, e.g., Dollar Tree Stores Inc. v. Toyama Partners LLC, 875 F. Supp. 2d 1058, 1071 (N.D. Cal. 2012) ("The question of whether a provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law to be decided by the Court." (citation omitted)); Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc., 521 F. Supp. 2d 1031, 1045 (N.D. Cal. 2007) ("Whether the contract uses the term 'penalty' or 'liquidated damages,' however, is not determinative. . . . 'A court will interpret a liquidated damages clause according to its substance, and if it is otherwise valid, will uphold it even if the parties have referred to it as a penalty.'" (citation omitted)). In other words, while Parsons may have agreed to the terms of the Contract allowing Covanta to recover liquidated damages against it, it is still within the Court's purview to determine the reasonableness and enforceability of those terms, in light of the circumstances particular to this case. As such, the Court finds the issues raised in the Motion suitable for disposition by this Court.

11

B.    Enforceability of Liquidated Damages Clauses Under Hawaii Law

Under Hawaii law, a liquidated damages provision must be enforced if there is a "reasonable relation" between the liquidated damages and the amount of the party's damages.  See Shanghai Inv. Co., Inc. v. Alteka Co. Ltd., 92 Hawai'i 482, 494, 993 P.2d 516, 528 (2000), overruled on other grounds, Blair v. Ing, 96 Hawai'i 327, 31 P.3d 184 (2001).  However, a liquidated damages clause that constitutes a penalty will not be enforced.  See Kona Hawaiian Assocs. v. Pac. Group, 680 F. Supp. 1438, 1449 (D. Haw. 1988) ("Hawaii law is clear that a liquidated damages clause that constitutes a penalty will not be enforced.  If the breach was not in bad faith, the nonbreaching party may be required to return any amount in excess of what is reasonably related to [ ] its damages." (citations omitted)).

The Restatement (Second) of Contracts § 356 utilizes a two-part test to determine whether an amount fixed as liquidated damages is so unreasonably large as to be a penalty.  See Restatement (Second) of Contracts § 356(1) (1981) ("Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.").  According to section 356, "[t]he first factor is the anticipated or actual loss caused by the breach. The amount

12

fixed is reasonable to the extent that it approximates the actual loss that has resulted from the particular breach, even though it may not approximate the loss that might have been anticipated under other possible breaches." Id. cmt. b. "The second factor is the difficulty of proof of loss. The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty . . . , the easier it is to show that the amount fixed is reasonable." Id. The Court balances these two factors; "[i]f the difficulty of proof of loss is great, considerable latitude is allowed in the approximation of anticipated or actual harm. If, on the other hand, the difficulty of proof of loss is slight, less latitude is allowed in that approximation." Id.

The policy behind liquidated damages is to "save[ ] the time of courts, juries, parties and witnesses and reduce[ ] the expense of litigation." Id. cmt. a. In instances where it is difficult to measure damages, the parties may agree on a fixed sum in advance. "However, the parties to a contract are not free to provide a penalty for its breach. The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy." Id.

1.  <u>Reasonable in light of anticipated or actual loss</u>

First, the Court considers whether the liquidated damages provided for under the Contract are reasonable in light of Covanta's damages. Before the Court can even evaluate reasonableness, however, it must determine whether to measure reasonableness in light of Covanta's *actual* or *anticipated* damages.

Here, the parties disagree as to whether the Court should measure the liquidated damages against Covanta's actual or anticipated damages. Parsons argues that the Court should look at Covanta's actual damages, which it claims are zero. Parsons points to the fact that Covanta did not have to pay any damages to the City and County for any delay resulting from Parsons's actions or inactions. Moreover, Covanta received a bonus for completing the Project on August 4, 2012.

Conversely, Covanta urges the Court to compare the liquidated damages to its prospective damages that were forecast at the time of the execution of the Contract. Covanta argues that it was potentially liable to the City and County for up to approximately $45,000 per day for any delay in the Project; had Parsons caused delay, Covanta could have recovered $20,000 per day from Parsons, but would still have been liable to the City and County for $45,000 per day. As such, Covanta argues that the liquidated damages provision is reasonable in light of its anticipated damages.

14

As an initial matter, the Court notes that there is a split among jurisdictions as to the proper measure of damages. Section 356 of the Restatements merely provides that the liquidated damages must be "reasonable in the light of the anticipated *or* actual loss caused by the breach[.]" Restatement (Second) of Contracts § 356 (emphasis added). Some courts adopt the "prospective" approach, which "requires only that the amount specified be a reasonable forecast or estimate of the damages expected or likely to flow from a breach of the contract, that is, that the appropriate determinant is whether the clause is reasonable compared to the anticipated, rather than the actual damages." 24 Williston on Contracts § 65:17 (4th ed., updated 2014). Other courts adopt the "retrospective" approach, which "address[es] whether the stipulated sum reasonably relates to the amount of actual damages caused by the breach. . . . If the liquidated sum greatly exceeds the amount of actual damages, then courts following this latter approach will treat the estimated sum as a penalty and will limit recovery to the actual damages." Id. Still other courts adopt a mixed view, whereby "it is the rule that reasonableness in comparison to either the expected or actual damages will suffice to legitimize a stipulated damages provision[.]" Id. However, it appears to be generally accepted that there must be some actual damage in order for a party to recover liquidated damages. 24 Williston on

15

Contracts § 65:33.[7]

Hawaii courts do not appear to have explicitly adopted any of these views.[8] In <u>OWBR LLC v. Clear Channel Communications, Inc.</u>, 266 F. Supp. 2d 1214 (2003), cited by both Parsons and Covanta, this district court considered whether a liquidated damages provision in a hotel reservation agreement was enforceable under Hawaii law. Although the court quoted section 356 of the

---

[7] Williston provides that "it is now generally agreed, in large part by reference to the language of the Restatement (Second) of Contracts, that some actual harm is required to support enforcement of a stipulated damages provision." Under the Restatement, "'[t]he central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy.' That principle is violated if substantial sums are recovered as liquidated damages in cases where there is no actual damage or loss as a consequence of the breach." <u>Id.</u>

[8] Although not directly relevant to the case at hand, Hawaii Revised Statutes § 490:2–718(1), which applies to transactions in goods, provides that:

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

Haw. Rev. Stat. § 490:2-718(1) (1965).

Restatement[9], it also cited to <u>Shanghai Investment Co., Inc. v. Alteka Co. Ltd.</u>, for

the proposition that the "reasonable relation" is determined when looking at the

"amount of the party's actual damages." <u>OWBR LLC</u>, 266 F. Supp. 2d at 1226.

However, the Court also referenced <u>von Kessel v. Unemori</u>, 100 Hawai'i 33, 58

P.3d 91, 2002 WL 31630416 (Haw. App. 2002) (unpublished disposition), for the

position that courts look at the "anticipated damages at time of contracting."

<u>OWBR LLC</u>, 266 F. Supp. 2d at 1226. Ultimately, the court did not make any

explicit determination as to the correct measure, but merely noted that "the parties

agreed that the Restatement view[10], that reasonableness can be measured in relation

---

[9] The court stated that:

> According to the Restatement (Second) of
> Contracts § 356, two factors combine in determining
> whether an amount fixed as damages is so unreasonably
> large as to be a penalty. The first is the reasonableness of
> the liquidated damages amount in light of the anticipated
> or actual loss caused by the breach. . . . The second is the
> difficulty of proof of loss.

<u>OWBR LLC</u>, 266 F. Supp. 2d at 1226 (quoting Restatement (Second) of Contracts
§ 356, cmt. a).

[10] The Restatement seems to allow the Court to adopt either test. <u>See</u>
Restatement (Second) of Contracts § 356 cmt. b ("The amount fixed is reasonable
to the extent that it approximates the actual loss that has resulted from the
particular breach, even though it may not approximate the loss that might have
been anticipated under other possible breaches. . . . Furthermore, the amount fixed

to either the actual or anticipated loss, governs." Id. at 1226 n.17.  Indeed,

although the court appeared to acknowledge that both anticipated and actual

damages are proper measures against which to gauge the reasonableness of

liquidated damages, the court held that there were too many issues of material fact

concerning the parties' experts' calculations to determine "the reasonableness of

the liquidated damages amount as compared to the anticipated or actual

damages . . . ." Id. at 1227; see also id. at 1229 ("Based on the conflicting

evidence concerning the amount of anticipated and actual damages Plaintiffs

suffered . . . , the Court finds that there is a genuine issue of material fact

concerning the figures essential to the Court's determination of whether the

amount fixed by the liquidated damages clause is reasonable.").

On the one hand, a line of Hawaii state court cases appears to indicate

that actual damages represent the preferred measure of reasonableness.  In Gomez

v. Pagaduan, 1 Haw. App. 70, 613 P.2d 658 (1980), the Hawaii Intermediate Court

of Appeals ("ICA") considered the enforceability of a liquidated damages clause in

an agreement of sale that provided that the seller may elect to keep all payments

made by the defaulting purchaser as liquidated damages.   Although the facts of

---

is reasonable to the extent that it approximates the loss anticipated at the time of
the making of the contract, even though it may not approximate the actual loss.").

that case concerned the sale of real property, the ICA examined the reasonableness of the liquidated damages and compared them to the seller's actual damages. The ICA explicitly held that:

> where the purchaser's breach does not involve bad faith conduct, a provision in an agreement stating that in the event of purchaser's default the seller may elect to keep all payments as liquidated damages may be enforced by the seller ***if there is a reasonable relation between the amount of payments retained and the amount of seller's actual damages.***

Gomez, 1 Haw. App. at 75, 613 P.2d at 662 (emphasis added). The ICA then continued to enumerate various methods of assessing actual damages. Id.; see also Dias v. Vanek, 67 Haw. 114, 117, 679 P.2d 133, 135 (1984) (the Hawaii Supreme Court quoted the ICA's holding in Gomez that "liquidated damages may be enforced by the seller if there is a reasonable relation between the amount of payments retained and the amount of seller's actual damages"); Ventura v. Grace, 3 Haw. App. 371, 374-75, 650 P.2d 620, 622-23 (1982) (also quoting Gomez in its discussion of liquidated damages).

More recently, the Hawaii Supreme Court in Shanghai Investment Co., Inc. continued to affirm the utility of the ICA's holding in Gomez, again relying on actual damages when determining the reasonableness of liquidated damages. When interpreting a liquidated damages provision in a sale agreement

for real property, the Hawaii Supreme Court stated:

> In the instant case, the jury found that Alteka's breach involved neither bad faith nor intentional conduct. . . . Consequently, under <u>Gomez</u>, Windward was entitled to retain the deposit made by Alteka as liquidated damages ***only if the amount of those damages bore a reasonable relation to Windward's actual damages.***

92 Hawaiʻi at 495, 993 P.2d at 529 (emphasis added).  Ultimately, the court held that there was no evidence to deduce sufficient facts "relating to ***actual damages*** enumerated in <u>Gomez</u>."  <u>Id.</u> (emphasis added).  Other jurisdictions also support the position that actual damages are a proper measure against liquidated damages.  <u>See, e.g.</u>, <u>In re Late Fee and Over-Limit Fee Litigation</u>, 741 F.3d 1022, 1026 (9th Cir. 2014) ("Liquidated damages are customarily unenforceable as penalties when they are in excess of actual damage caused by a contractual breach."); <u>In re 268 Ltd.</u>, 85 B.R. 101, 106 (9th Cir. B.A.P. 1988) (Under Nevada law, "[i]n order to prove a liquidated damage clause constitutes a penalty, the challenging party must persuade the court the liquidated damages are disproportionate to the *actual* damages sustained by the injured party." (citation omitted) (emphasis in original)) (Meyers, J., concurring).

On the other hand, Hawaii courts have not foreclosed the use of anticipated damages, which appears to be the majority rule.  Under the

"prospective" approach, liquidated damages are determined at the time the parties

contract for the liquidated damages.  Williston notes that this view has been

adopted in various forms by the majority of jurisdictions:

> The more popular view is that the reasonableness of a
> liquidated damages clause should be determined as of the
> time the contract was executed, not with the benefit of
> hindsight.  This view, sometimes referred to as the
> "prospective" or "single look" approach, requires only
> that the amount specified be a reasonable forecast or
> estimate of the damages expected or likely to flow from a
> breach of the contract, that is, that the appropriate
> determinant is whether the clause is reasonable compared
> to the anticipated, rather than the actual damages.

24 Williston on Contracts § 65:17 (footnotes omitted); see also In re Bubble Up

Del., Inc., 684 F.2d 1259, 1262 (9th Cir. 1982) (The Ninth Circuit noted that,

"[u]nder the principles of general contract law that apply to the construction of

government contracts, liquidated damages provisions are not penalties '(w)hen

they are fair and reasonable attempts to fix just compensation for anticipated loss

caused by breach of contract.'  Thus, a basic requirement for a valid liquidated

damages clause is that the liquidated amount be reasonable." (citations omitted));

Siletz Trucking Co. v. Alaska Int'l Trading Co., 467 F.2d 961, 963 (9th Cir. 1972)

("In Oregon[,] a liquidated damage clause is enforceable if at the time of the

making of the contract the sum provided bears a reasonable relationship to the

anticipated damages and the actual damages are difficult or impossible to ascertain."); 24 Willison on Contracts § 65:1 ("It is generally agreed that a liquidated damages provision does not violate public policy when, at the time the parties enter into the contract containing the clause, the circumstances are such that the actual damages likely to flow from a subsequent breach would be difficult for the parties to estimate or for the nonbreaching party to prove, and the sum agreed upon is designed merely to compensate the nonbreacher for the other party's failure to perform.").

       Thus, as a threshold matter, the Court must determine whether, under Hawaii law, liquidated damages are measured against actual damages, anticipated damages, or both. "When interpreting a state law, a federal court is bound by the decisions of a state's highest court. In the absence of such a decision, federal courts attempt to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." State Farm Fire & Cas. Co. v. Vogelgesang, 834 F. Supp. 2d 1026, 1032-33 (D. Haw. 2011) (citing Ariz. Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995)). As the district court noted in OWBR LLC, "[i]n the absence of statute or case law on the subject, Hawaii courts often look to the Restatement (Second) of Contracts." 266 F. Supp.

2d at 1222 (citing <u>Zanakis-Pico v. Cutter Dodge, Inc.</u>, 98 Hawai'i 309, 324, 47

P.3d 1222, 1237 (2002); <u>Hough v. Pac. Ins. Co.</u>, 83 Hawai'i 457, 468 n.15, 927

P.2d 858, 869 n.15 (1996)).

  In the present case, it is clear to the Court that Hawaii courts have

repeatedly used actual damages as a measure for the reasonableness of liquidated

damages. <u>See</u> <u>Shanghai Investment Co., Inc.</u>, 92 Hawai'i at 495, 993 P.2d at 529;

<u>Dias</u>, 67 Haw. at 117, 679 P.2d at 135; <u>Ventura</u>, 3 Haw. App. at 374-75, 650 P.2d

at 622-23; <u>Gomez</u>, 1 Haw. App. at 75, 613 P.2d at 662. However, it is equally

apparent that Hawaii courts have not foreclosed the use of anticipated damages as a

permissible measure of reasonableness. <u>See, e.g.</u>, Haw. Rev. Stat. § 490:2-718(1)

(allowing for liquidated damages in a sale of goods only if they are "at an amount

which is reasonable in the light of the anticipated or actual harm caused by the

breach"). The Court was unable to find any case in which a Hawaii court has

considered the competing measures and concluded that actual damages are the

***exclusive*** measure of damages, and the parties have not brought any such authority

to the Court's attention. Because Hawaii courts have not foreclosed the use of

anticipated damages when measuring reasonableness, the Court cannot say that

anticipated damages, which are used by the majority of jurisdictions, are an

improper form of measure.

23

Thus, in the absence of specific Hawaii authority determining the proper measure of reasonableness of liquidated damages, the Court will look to the Restatements approach and compare the liquidated damages to both Covanta's actual and anticipated damages; if the liquidated damages are reasonable in relation to either measure, the Court will hold that they are reasonable.[11]  However, as discussed below, regardless of which method is employed, the Court finds that there are genuine disputes of material fact precluding summary judgment at this time.

---

[11] In interpreting Pennsylvania law providing that liquidated damages must be reasonable "in the light of anticipated or actual harm," the Ninth Circuit noted:

> The choice of the disjunctive appears to be deliberate.  The language chosen is in harmony with the Restatement (Second) of Contracts § 356 (1979), which permits liquidated damages in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.  Section 356, Comment b declares explicitly: "Furthermore, the amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss."

Cal. & Hawaiian Sugar Co. v. Sun Ship, Inc., 794 F.2d 1433, 1436-37 (9th Cir. 1986).  The court additionally considered various common law principles that developed in Pennsylvania.

a.      Reasonableness of Covanta's Liquidated
Damages When Compared to its Actual Damages

First, based on Hawaii courts' use of actual damages to evaluate the

reasonableness of liquidated damages, the Court compares the liquidated damages

provided for in the Contract against Covanta's actual loss.  Parsons argues that the

"liquidated damages are unreasonable and unenforceable because the liquidated

damages alleged are unrelated to any actual damages suffered by Covanta. . . .

[N]ot only were there no actual damages from the alleged delays in achieving

Construction Completion, but Covanta claimed an early completion bonus for

delivering the project ahead of schedule."  (Mot. at 19-20.)  Parsons references the

$1,569,879.98 early completion bonus that the City and County awarded to

Covanta based on the August 4, 2012 Acceptance Date of the Project in support of

its argument that Covanta was not damaged.  (Id.)

In response, Covanta argues that it did experience actual damages,

because, "[i]f Parsons had timely met its required milestones, . . . the City and

County would have granted an Acceptance based on the July 23, 2012 Acceptance

Test, without qualification – entitling Covanta to the entire construction bonus."

(Mem. in Opp'n at 22.)  Moreover, Covanta claims that it had to spend

approximately $2 million on its ash residue system and other work in order to

secure the retroactive Acceptance Date.  (Id.)  In other words, Covanta claims that

its actual damages are the cost to fix Parsons's allegedly defective work that

caused the delay in the Acceptance Date, as well as the lost portion of the bonus it

received from the City and County.

Based on the parties' submissions, the Court holds that there are too

many genuine issues of material fact regarding Covanta's actual damages to

warrant summary judgment at this time.  First, Parsons does not provide any

evidence to support its bald allegation in its Motion or Concise Statement of Facts

that Covanta suffered no actual damages.  (Mot. at 19-20; Reply at 10.)  Rather,

Parsons merely states in conclusory fashion that there were "no actual damages

from the alleged delays in achieving Construction Completion . . . ."  (Mot. at 20.)

In response, Covanta argues that its actual damages are (1) the fact

that it could have received a larger bonus, and (2) the money expended to retrofit

the ash residue system and other expenses in order to achieve Construction

Completion.  (Mem. in Opp'n at 22.)  However, Covanta does not provide the

Court with sufficient information on its supposed "entire construction bonus," and

instead claims, without providing any supporting citation or documentation, that

"[i]f Parsons had timely met its required milestones, Covanta asserts that the City

and County would have granted an Acceptance based on the July 23, 2013

Acceptance Test, without qualification – entitling Covanta to the entire construction bonus." (Id.) Covanta provides no evidence that the City and County would have granted an early Acceptance, or how much larger a bonus it would have received. Rather, in the Declaration of Robert Margolis, Covanta's Project Manager, attached to Covanta's Concise Statement of Facts, Mr. Margolis states, "I believe that, had Parsons met its Construction Completion obligations on schedule, there would have been no issues with the ash residue handling system; and, therefore, that the City & County would have agreed to the Acceptance Date as submitted by Covanta without qualification." (Covanta's CSF, Decl. of Robert Margolis ("Margolis Decl.") at ¶ 10.) Mr. Margolis's conjecture as to when and whether the City and County would have accepted the Project is insufficient to demonstrate that Covanta would have received a larger bonus and the amount of that bonus such that the Court could measure it against the liquidated damages.[12]

---

[12] Covanta's CSF attaches its contract with the City and County, and Mr. Margolis states that, "[a]t the time of the General Contract with Parsons, Covanta estimated that the construction bonus as provided for under the C&C Contract would be worth between approximately $26,000 per day to approximately $40,000 per day, depending on the applicable energy rates and amount of energy generated during the construction bonus period." (Covanta's CSF, Margolis Decl. at ¶ 6.) However, Covanta does not provide the Court with information as to the total bonus amount that Covanta allegedly lost, and any attempt by the Court to calculate that amount would be uninformed conjecture.

Furthermore, there is a genuine dispute of material fact regarding the monies Covanta claims it expended to secure the retroactive Acceptance Date. Covanta claims that it spent approximately $2 million on its ash residue system and other work in order to secure the bonus from the City and County. (Mem. in Opp'n at 22; Covanta's CSF, Margolis Decl. at ¶¶ 10-13.) However, Parsons argues that Covanta's damages are not due to Parsons's delay, but that they were the fault of one of Covanta's vendors, Jervis Webb. (Reply at 5-6.) Parsons argues that Jervis Webb designed and supplied the ash residue system, which was defective and had to be modified and repaired at great expense. (Id.) Parsons also points to the deposition testimony of Covanta's Construction Manager, who stated that he did not know whether any of the delays were caused by Parsons.[13] (Reply at 6-7.) Given the record presently before the Court, the Court finds that there are

---

[13] Construction Manager Don Neve stated:

> Q. So, the types of issues that made the installation issues were issues that you would normally expect in the construction of a facility of this nature?
> A. Yes.
> Q. All right. Do you know if any of those acts or omissions of Parsons resulted in delays in the project?
> A. I do not.

(Reply at 6-7 (quoting Dep. of Don Neve at 79:9-80:3, attached as Exh. H to Second Decl. of J. Welch).)

genuine disputes of material fact regarding whether Covanta's approximately $2 million in damages caused by repairs to the ash residue system and other undefined problems are attributable to Parsons.  While there does not appear to be any dispute that Covanta spent approximately $2 million to secure the retroactive Acceptance Date, the Court is unable to determine whether the delays and problems are properly attributable to Parsons's actions or inactions.

As such, there are too many factual disputes regarding Covanta's alleged actual damages.  The Court thus holds that, based on the record before it, it is unable to determine whether the liquidated damages are unreasonable and unenforceable in light of Covanta's actual damages.

### b.    Reasonableness of Covanta's Liquidated Damages When Compared to its Anticipated Damages

Under the second approach, the Court compares Covanta's liquidated damages to its damages that were anticipated at the time the Contract was executed, in an effort to determine whether the amount is reasonable.  Covanta argues that the liquidated damages provision calling for $20,000 per day is reasonable because the City and County could have assessed it up to $45,000 per day for delays.  (Mem. in Opp'n at 21; Margolis Decl. at ¶ 5.)  In response, Parsons does not address Covanta's anticipated damages, but rather focuses on actual

damages as being the operative measure. (Reply at 7-10.)

Given that Parsons has not provided the Court with any factual information to determine that the liquidated damages are unreasonable and therefore unenforceable when compared to Covanta's anticipated damages, the Court cannot say, as a matter of law, that the liquidated damages are unreasonable. Moreover, even if the Court were to consider Covanta's anticipated damages, there is no reasonable way for the Court to compare the liquidated damages to Covanta's alleged anticipated damages. Covanta alleges that, under the contract with the City and County, it could have been liable up to $45,000 per day in liquidated damages: "At the time of the General Contract with Parsons, Covanta estimated that the delay damages as provided for under the C&C Contract would amount to approximately $45,000 per day." (Covanta's CSF, Margolis Decl. at ¶ 5.) However, after a review of that contract, the Court is unable to determine that the amount payable to the City and County is, indeed, approximately $45,000 per day. The contract provides:

> (d) the Contractor shall pay delay liquidated damages ("Delay Liquidated Damages") to the City equal to the sum of the following during each Day of the Extension Period:
>
> (a) An amount equal to the annual debt service required to pay the principal and interest on the

Expansion General Obligation Bonds and any other charges or fees paid by the City to third parties relative to or in respect of such Expansion General Obligation Bonds, divided by three hundred sixty-five (365); plus

(b)(1) A landfill transportation and disposal charge of seventy dollars ($70) per Ton of Acceptable Waste multiplied by (2) the number of Tons representing the difference between (A) the lesser of (i) the Annual Processing Guarantee of the Project divided by three hundred sixty-five (365) and (ii) the number of Tons of Acceptable Waste actually delivered to the Project by or on behalf of the City during the Day minus (B) the actual number of Tons of Acceptable Waste Processed by the Project per Day, but in no event shall the number of Tons represented by component (2) exceed the number of Tons of Acceptable Waste accepted at the City's landfill for the Day; minus

(c) All electric capacity and energy revenues paid or payable by HECO for energy generated and delivered by the City from the Expansion for the Day.

(Covanta's CSF, Exh. A, Expansion Construction Agreement, p. 142.)

Rather than providing a flat daily sum for liquidated damages, the contract between Covanta and the City and County requires multiple calculations based on information not before the Court. Mr. Margolis's statement that the parties calculated the liquidated damages at $45,000 per day is wholly unsupported in the record. There is no evidence that the parties considered $45,000 to be Covanta's anticipated damages at the time the Contract was created. Moreover,

there is also no evidence that the parties considered the $45,000-per-day liquidated damages owed to the City and County when setting the $20,000-per-day liquidated damages owed to Covanta.  As such, even if the Court were to compare the liquidated damages to Covanta's anticipated damages, based on the facts currently before the Court, it cannot determine whether the liquidated damages provision in the Contract is unreasonable in light of the anticipated damages contemplated at the time the parties executed the Contract.

2.    <u>Difficulty of Ascertaining Loss Suffered</u>

Although the Court is unable to determine, under the first prong of the liquidated damages test, whether the liquidated damages are unreasonable, the Court can consider the second prong and look to the difficulty of measuring the loss suffered by Covanta.  The more difficult the assessment, the greater the likelihood that the liquidated damages clause is valid.  <u>See</u> Restatement (Second) of Contracts § 356 cmt. a ("The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty . . . , the easier it is to show that the amount fixed is reasonable.").

However, in the present case, neither party has addressed this second

factor.[14]  Although the Court would assume that certain calculations would not be overly difficult, the parties have not provided the Court with any information to aid it in its determination, and the Court declines to rule on an issue without the operative facts and argument before it.  Therefore, the Court will not make any determination on the second factor of the liquidated damages analysis.

Thus, the Court DENIES Parson's Motion and holds that there are genuine disputes of material fact as to whether the liquidated damages clause is unreasonable and unenforceable in this case.  The Court is unable to evaluate the reasonableness of the liquidated damages without more complete information regarding calculations of actual or anticipated damages, and the parties have neglected to address the second factor.  The Court need not reach the question of the applicable Construction Completion Date at this time.

_____

[14] In contrast, the court in OWBR LLC held that it was nearly impossible to determine the lost profit, because, although it was possible to estimate the lost room profits, it was difficult to determine the extra money the guests would have expended on food and drink, entertainment, and ancillary services, such as the spa, gift shop, in-room movies, and recreational programs.  266 F. Supp. 2d at 1226-27. As such, because such an estimate depends on unknown facts such as guests' behavior, the court held that the second factor favored the plaintiff, because "the profits Plaintiff would have received from these other services had SFX performed are difficult to determine."  Id. at 1227.   In that case, however, the court had the benefit of expert reports, calculations, and estimates before it.  In the present case, the parties do not provide the Court with any information and do not even address the second factor.

II.     BREACH OF CONTRACT

Next, Parsons argues that it is entitled to summary judgment on its claims against Covanta for breach of contract.  Parsons claims that, under Article 7.6, Covanta is required to compensate Parsons for changed work on a cost basis until the parties reach a resolution regarding a proposed change order.  Parsons argues that "it is undisputed that Parsons performed additional work at Covanta's direction for which Covanta has refused to pay Parsons' costs."  (Mot. at 23.) Parsons claims that it submitted multiple CORs and Field Change Requests ("FCR"), but Covanta still owes it approximately $4,581,558.00 relating to 33 unresolved CORs.  (Id. at 24.)  Parsons states that "Covanta does not contend that Parsons should not be compensated for its work under these CORs and it is undeniable that Parsons is owed additional compensation relative to this Owner-directed work.  Covanta only disputes the total amount of damages Parsons is entitled to for this work."  (Id.)  Parsons further argues that, because "it is undisputed that Covanta owes Parsons its costs to perform this changed work but has failed to satisfy its contractual obligation[,] . . . Parsons is entitled to partial summary judgment on its counterclaim for breach of contract for the costs incurred in performing changed work directed by Covanta, leaving as an issue for trial the

amount of damages resulting from Covanta's breach." (Id. at 25.) Parsons does not cite to any fact in the record to support its position.

Contrary to Parsons's assertion that Covanta does not dispute Parsons's right to compensation, Covanta does, in fact, contest liability on Parsons's breach of contract claim. It argues, first, that the 33 CORs identified by Parsons are "new claims that are not presently included in the scope of this litigation. In making its argument, Parsons completely ignores that it has since acknowledged and agreed with Covanta that the 33 unresolved Parsons/Covanta CORs shall not be part of Parsons' claims in this litigation and are outside the scope of the consolidated cases." (Mem. in Opp'n at 26 (emphasis omitted).) Covanta references its Memorandum in Opposition to Parsons RCI, Inc.'s Motion for Leave to File First Amended and Consolidated Third-Party Complaint and Counterclaim Against Covanta Honolulu Resource Recovery Venture Filed October 22, 2014 [Dkt. No. 121]. (Doc. no. 130.) Therein, Covanta argues that the parties had agreed that the non-AE claims were not a part of the present litigation, as evidenced by the Discovery Letter Agreement, which limits discovery only to AE-related claims. (Doc. 72-3.) In further support of its argument that the 33 CORs at issue were never a part of this litigation, Covanta argues that Parsons's vague references to "various" and "numerous" CORs and FCRs in its pleadings are

insufficient to assert breach of contract claims against Covanta and are not supported by any evidence in Parsons's Motion. (Mem. in Opp'n at 26.) Finally, Covanta argues that there is a genuine dispute of material fact regarding Parsons's breach of contract claim, because the parties disagree on whether the work at issue "is actually changed work [that falls under Article 7.6] – or whether it is work that should have been inferred by Parsons as a part of the base scope from the General Contract documents. Covanta absolutely disputes entitlement with respect to the claims in this litigation, on the basis that the claims are based on work that should have been reasonably inferred from the General Contract documents." (Id. at 27 (brackets added).)

Based on the record before it, the Court must deny summary judgment at this time. Apart from Parsons's bold assertion that there is no dispute as to its entitlement to the $4.5 million for additional work, there does, in fact, appear to be a dispute over its entitlement to such fees. First, Parsons does not appear to have asserted a breach of contract based on these 33 CORs in any detail, and indeed provides absolutely no factual basis for the Court to grant summary judgment, other than contending that these claims were properly pled. Covanta, understandably, also does not have any facts directly relating to these 33 CORs, because it was of the understanding that these claims were outside the scope of the

present litigation, as confirmed by the parties' Discovery Letter Agreement, which was later enforced by the Court. (Doc. no. 78.) As a result, neither party presents the Court with much support for their respective positions.

Second, turning to the merits of the breach of contract claim, Parsons contends that this is the first instance in which Covanta argues that the work described in the 33 CORs is encompassed by the Contract. In response, Covanta claims that its forthcoming expert reports will support its position. This issue clearly raises a disputed fact between the parties. The parties' respective expert reports are not before the Court at this time, and the issue of whether the work performed by Parsons was originally a part of the Contract or properly subject to a COR is not fleshed out in the record such that the Court can conclude one way or the other whether, as a matter of law, Parsons is entitled to summary judgment. Thus, the issues raised by Parsons in connection with its breach of contract claim are not simply a matter of the amount of damages, but also the entitlement to damages. Accordingly, because Parsons has failed to demonstrate that there is no genuine dispute of material fact with regard to its breach of contract claim, the Court cannot grant summary judgment in Parsons's favor.

## CONCLUSION

For the foregoing reasons, the Court DENIES Parsons's Motion for

Partial Summary Judgment.  The Court DENIES the Motion insofar as it seeks a

declaration that the liquidated damages clause of the Contract is unenforceable,

because there are too many genuine disputes of material fact regarding Covanta's

anticipated and actual damages for the Court to make a determination as to the

reasonableness of liquidated damages.  Furthermore, the Court DENIES the

Motion as to Parsons's claim against Covanta for breach of contract.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, <u>February 27, 2015</u>.



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

<u>American Electric Co., LLC v. Parsons RCI, Inc.</u>, CIV. NO. 13-00471 BMK, CIV. NO. 14-00020 BMK (Consolidated), ORDER DENYING DEFENDANT PARSONS RCI, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST COVANTA HONOLULU RESOURCE RECOVERY VENTURE ON ITS CLAIMS AND COUNTERCLAIMS FOR LIQUIDATED DAMAGES