IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN ELECTRIC CO., LLC, | CIV. NO. 13-00471 BMK |
| | CIV. NO. 14-00020 BMK |
| Plaintiff, | |
| | (CONSOLIDATED CASES) |
| vs. | |
| | |
| PARSONS RCI, INC., | ORDER (1) GRANTING IN PART |
| | AND DENYING IN PART |
| Defendant. | COVANTA HONOLULU |
| | RESOURCE RECOVERY |
| | VENTURE'S MOTION FOR |
| | PARTIAL SUMMARY JUDGMENT |
| COVANTA HONOLULU | RE DISALLOWED CLAIMS (Doc. |
| RESOURCE RECOVERY | No. 113) AND (2) DENYING |
| VENTURE, | COVANTA HONOLULU |
| | RESOURCE RECOVERY |
| Plaintiff, | VENTURE'S MOTION FOR |
| | PARTIAL SUMMARY JUDGMENT |
| vs. | RE PARSONS, RCI, INC.'S DUTY |
| | TO DEFEND AND, WITH |
| PARSONS RCI, INC., | RESPECT TO THE DISALLOWED |
| | CLAIMS, TO INDEMNIFY (Doc. |
| Defendant. | No. 122) |

ORDER (1) GRANTING IN PART AND DENYING IN PART
COVANTA HONOLULU RESOURCE RECOVERY VENTURE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
RE DISALLOWED CLAIMS (Doc. No. 113) AND
(2) DENYING COVANTA HONOLULU RESOURCE RECOVERY
VENTURE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE PARSONS, RCI, INC.'S DUTY TO DEFEND AND, WITH
RESPECT TO THE DISALLOWED CLAIMS, TO INDEMNIFY (Doc. No. 122)

Before the Court is Plaintiff/Third-Party Defendant Covanta Honolulu Resource Recovery Venture's ("Covanta") Motion for Partial Summary Judgment re Disallowed Claims (the "Motion re Disallowed Claims"). (Doc. no. 113.) Covanta seeks partial summary judgment against Defendant/Third-Party Plaintiff Parsons RCI, Inc. ("Parsons") on the grounds that Parsons cannot "pass through" claims made against it by subcontractor Plaintiff American Electric Co., LLC ("AE"). Covanta contends, *inter alia*, that Parsons is precluded from asserting AE's claims against it, as Parsons itself has refused to recognize the validity of AE's claims and did not follow the contractual requirements to assert such claims, and that Parsons is not asserting the claims "on behalf of" AE.

Also before the Court is Covanta's Motion for Partial Summary Judgment re Parsons, RCI, Inc.'s Duty to Defend and, With Respect to the Disallowed Claims, to Indemnify (the "Motion re Duty"). (Doc. no. 122.) Covanta urges the Court to hold that Parsons has a contractual duty to defend and indemnify it against any claims related to claims brought by a subcontractor against Covanta or Parsons.

The Motion re Disallowed Claims and Motion re Duty (collectively,

the "Motions") came on for hearing before the Court on February 11, 2015.[1]  After

careful consideration of the Motions, the supporting and opposing memoranda, and

the arguments of counsel, the Court hereby GRANTS IN PART and DENIES IN

PART the Motion re Disallowed Claims and DENIES the Motion re Duty.

BACKGROUND

I.    FACTUAL BACKGROUND

Covanta is the developer and operator of the Alternative Energy

Facility/Third Boiler Addition at the H-Power Facility (the "Project") in Kapolei,

Hawaii.  (Covanta's Concise Statement of Facts ("CSF") ¶ 1.)  Covanta entered

into a General Contract ("Contract") with Parsons to provide labor, equipment,

materials, construction, supervision, and construction management for the Project.

(Id. ¶ 2.)  Parsons, in turn, entered into a Subcontract ("Subcontract") with AE to

provide the electrical work required for the Project.  (Parsons's CSF ¶ 5.)

A.    The Contract and Subcontract Provisions

The Contract between Covanta and Parsons provides that "Covanta

---

[1] Concurrent with the hearing on the present Motions, the Court also heard arguments on (1) Parsons's Motion for Partial Summary Judgment Against Covanta Honolulu Resource Recovery Venture on its Claims and Counterclaims for Liquidated Damages, and (2) Parsons's Renewed Motion for Leave to File First Amended and Consolidated Third-Party Complaint and Counterclaim.  (Doc. nos. 153 and 174.)  The Court disposes of those motions by separate orders.

may, at any time, or from time to time, order additions, deductions, deletions, revisions to any portion of the Work . . . or make changes to the Design or other Contract Documents within the scope of this Contract."  (Covanta's CSF, Exh. A, Contract art. 7.1.)  The Contract further provides that any changes "shall be authorized by a written change order."  (Id. art. 7.2.1.)

Adjustments to the cost or timing of the Project necessitated by changes to the scope of work are also addressed in the Contract, which provides that

> Contractor shall not be entitled to an increase in the Contract Price or an extension of any Completion Date with respect to any Work performed, except as specifically provided in this Article 7.  A Change Order, approved in writing by Covanta, shall be a condition precedent to Contractor's right to an increase or decrease in the Contract Price or any Completion Date.

(Id. art. 7.2.2.)

More specifically, with respect to the COR process, the Contract states,

> [i]f any directive or action by Covanta will cause a material increase or decrease in the costs of, or time of performance of the Work, a Change Order shall be issued in accordance with this Article 7, adjusting the Contract Price and/or any Completion Date.  Any request for a Change Order by Contractor under this Article 7 shall be made upon Notice to Covanta in accordance with Article

11.11 of this Contract within (7) days of the commencement of the event giving rise to the request. Within twenty (20) days of submission of Notice to Covanta, Contractor shall submit a "Change Order Request." Such Change Order Request shall be accompanied by a detailed description of the circumstances and the specific reasons for the Change Order Request; a detailed itemization and substantiation of any requested adjustment in the Contract Price or any Completion Date; documentation, charts, graphs, photographs and reports, which bear on the change; specific reference to the provisions of this Contract and any other supporting data and information upon which Contractor intends to rely or which Covanta requests. Failure to provide Notice and/or to submit a Change Order Request, including all required documentation, timely or otherwise in accordance with this Article 7 shall be deemed a waiver by Contractor of the right to seek any adjustment to the Contract Price or any Completion Date.

(Id. art. 7.2.3.) Accordingly, under the plain language of Article 7.2.3, to seek an adjustment in the Contract price due to changes, Parsons was required to provide written Notice to Covanta within 7 days of the "event giving rise to the request," and then submit a second written Change Order Request ("COR") within 20 days of the Notice.

In the event that a dispute arose concerning the approval of a COR or any other contract issue, either party could make a claim upon the other,

which shall mean a written demand proposing specific relief or a remedy to an issue of dispute arising out of or

relating to this Contract, the breach, the termination of, or validity of the Contract, the Contract Documents or the Work, including all contract claims, equitable claims, claims for an extension of time and claims brought by the Contractor, on behalf of a subcontractor, against Covanta, all of which will be handled in Accordance with this Article 11.5. A Party shall submit "Notice of Claim," together with supporting documentation and transmitted in accordance with the requirements of Article 11.11, within thirty (30) days of the event giving rise to the Claim.

(<u>Id.</u> art. 11.5.2.) Article 11.5 provides that either party may make a claim regarding "the breach . . . of this Contract, . . . including all contract claims, equitable claims, claims for an extension of time and claims brought by Contractor, on behalf of a subcontractor, against Covanta, all of which will be handled in accordance with this Article 11.5." (<u>Id.</u> art. 11.5.)

The Contract also includes certain provisions regarding indemnification. Article 2.9.2 provides:

Contractor shall notify Covanta of any claim or suit made or commenced by any subcontractor or supplier of any tier against Contractor, Covanta or the Client. To the fullest extent permitted by Applicable Law, Contractor shall protect, defend, indemnify, save and hold harmless Covanta, its Affiliates, its Client, members of the Client's City Council, and all of their respective agents, consultant[s] and employees from and against any and all loss, claims, damages and/or liability relating to any such claim or suit made or commenced by any such subcontractor or supplier of any tier against Contractor,

> Covanta or the client, including attorneys' fees and
> related expenses, and the payment of any award or
> settlement amounts resulting therefrom. . . .

(Id. art. 2.9.2.) Moreover, Article 6.1.1 provides for indemnification concerning

tort claims:

> To the fullest extent permitted by Applicable Law,
> Contractor agrees, at its cost and expense, to protect,
> defend, save, indemnify and, and [sic] hold completely
> free and harmless Covanta, its Affiliates, its Client,
> members of the Client's City Council, and all of their
> respective parents, Affiliates, agents, consultants,
> employees and successors or assign . . . from and against
> any and all allegations, liabilities, actions, appeals, claims
> (including any and all claims for personal injury, death to
> any person or party, including Contractor's employees, or
> loss of or damage to third party property), liens,
> damages, costs, judgments, causes of action, losses and
> expenses, including attorneys' fees and related
> expenses . . . arising directly out of or related to the
> performance or nonperformance of the Work and this
> Contract attributable to the negligence, error, omission
> willful misconduct, bad faith or lack of due diligence, to
> the extent caused by Contractor, its subcontractors,
> vendors, suppliers, employees or anyone for whose acts
> any of them may be liable. . . .

(Id. art. 6.1.1.)

Regarding the Subcontract between AE and Parsons, the parties

appeared to agree that Parsons could pass through AE's claims to the Project

owner. Notably, the Subcontract did contemplate the existence of pass-through

claims:

> CONTRACTOR and SUBCONTRACTOR agree that all claims, disputes or other controversies relating to this SUBCONTRACT ***which are not pass-through claims to OWNER***, shall be decided by litigation unless CONTRACTOR elects to have such claim, dispute or controversy resolved by arbitration.

(Subcontract § 4.3 ¶ 1 (emphasis added) (doc. no. 57-3).)

Specifically, the Subcontract appears to contemplate a dispute between AE and Parsons based on Covanta's alleged wrongdoing. Paragraph 3 of section 4.3 provides:

> ***In the event of any dispute or claim between CONTRACTOR and OWNER which directly or indirectly involves the work performed or to be performed by SUBCONTRACTOR, or in the event of any dispute or claim between CONTRACTOR and SUBCONTRACTOR caused by or arising out of conduct for which OWNER may be responsible***, SUBCONTRACTOR agrees to be bound to CONTRACTOR and CONTRACTOR agrees to be bound to SUBCONTRACTOR to the same extent that CONTRACTOR is bound to OWNER by the terms of the MAIN CONTRACT and by any and all procedures and resulting decisions, findings, determinations, or awards made thereunder by the person so authorized in the MAIN CONTRACT, or by an administrative agency, board, court of competent jurisdiction or arbitration. ***If any dispute or claim of SUBCONTRACTOR is prosecuted or defended by CONTRACTOR together with disputes or claims of CONTRACTOR'S own, and the SUBCONTRACTOR is not directly a party,***

**SUBCONTRACTOR agrees to cooperate fully** with CONTRACTOR and to furnish all documents, statements, witnesses, and other information required by CONTRACTOR for such purpose and shall pay or reimburse CONTRACTOR for all expenses and costs, including reasonable attorneys' fees incurred in connection therewith, to the extent of SUBCONTRACTOR'S interest in such claim or dispute. SUBCONTRACTOR agrees to be bound by the procedure and final determination as specified in the MAIN CONTRACT and it will not take, or will suspend, any other action or actions with respect to any such claims and will pursue no independent litigation with respect thereto, pending final determination of any such dispute resolution procedure between OWNER and CONTRACTOR. **It is expressly understood and agreed that as to any and all claims asserted by SUBCONTRACTOR in connection with this Project arising from the actions or fault of OWNER, CONTRACTOR shall not be liable unless CONTRACTOR'S conduct is grossly negligent, fraudulent, or in bad faith to SUBCONTRACTOR for any greater amount than OWNER is liable to CONTRACTOR**, less any markups or costs incurred by CONTRACTOR. As to any claims asserted by SUBCONTRACTOR for or on account of acts or omissions of OWNER or its agents or design professionals, at the sole option of CONTRACTOR, SUBCONTRACTOR agrees to prosecute such claims in CONTRACTOR'S name. For any amount recovered or collected (whether through proceedings or settlement) by SUBCONTRACTOR, CONTRACTOR shall be entitled to ten percent (10%) of such amount received or collected as its mark-up for such claims provided, however, **that CONTRACTOR cooperates with, and does not hinder or interfere with SUBCONTRACTOR'S pass through claim**.

SUBCONTRACTOR shall have full responsibility for preparation and presentation of such claims and shall bear expenses thereof including attorneys' fees.

(Id. ¶ 3 (emphases added).)

B.    AE's Work on the Project

Based upon preliminary drawings that were substantially incomplete, AE agreed to perform the electrical work on the Project for $12,866,586.  (AE First. Am. Compl. ¶ 9.)  According to AE, Covanta committed to provide a full and final project design by November 2010, before the majority of AE's work on the project was to take place.  (Id. ¶¶ 48-49.)  AE, however, was required to begin work well before the completion of project design work due to the "fast-track" nature of the third boiler project.  (Id. ¶ 49; Covanta First Am. Compl. ¶ 10.)

AE asserts that the "multitude of changes during construction," evidenced by numerous CORs and Field Change Requests ("FCR"), "caused substantial escalation in the quantities and cost of the work beyond any reasonable estimate at the time of contract, and beyond the quantities provided by AE to document the basis of its bid."  (AE First Am. Compl. ¶ 13.)  AE contends that it was required by Parsons "to perform extra work which was outside of its original scope of work, accelerate its work, re-sequence its work, and perform rework due to uncoordinated and deficient drawings, with the promise and agreement that

[AE] would be compensated for its extra work." (Id. ¶ 198.) In light of this additional work and associated expense, AE brought suit against Parsons seeking "$12,579,308 plus accruing interest, attorney's fees and costs," owed for additional work performed over and above the amount of AE's original bid. (Id. ¶ 201.)

Of the $12,579,308 claimed by AE, $6,439,773 has been identified by Covanta as arising from the so-called "Disallowed Claims," i.e., claims that Parsons allegedly cannot assert against Covanta, for the reasons discussed in the Motion re Disallowed Claims. The alleged Disallowed Claims are as follows:

| | Disallowed Claim | Amount |
|---|---|---|
| 1 | Additional Conduit Scope Growth (COR281) | $1,581,061 |
| 2 | Additional Wire Scope Growth (COR282) | $104,531 |
| 3 | Additional Fitting Scope Growth (COR 283) | $1,684,330 |
| 4 | Delay/Extended Overhead | $441,142 |
| 5 | Additional Supervision | $2,117,810 |
| 6 | Outstanding FCRs[2] | $510,899 |
| | Total | $6,439,773[3] |

(Mot. re Disallowed Claims at 10.)[4] Covanta alleges that it is undisputed that

---

[2] Covanta lists the Outstanding FCRs as CORs 35, 57, 91, 99, 101, 111, 113, 117, 126, 132, 136, 138, 139, 142, 144, 157, 178, 179, 187, 191, 194, 202, 206, 208, 211, 212, 215, 219, 220, 223, 227, 232, 233, 237, 239, 249, 251, and 286. (Mot. re Disallowed Claims at 10.) However, Covanta acknowledges that COR 227 may be a part of AE's Delay/Extended Overhead claim. (Id. at 10 n.4.)

[3] Parsons states that AE has since revised the total sum of its Growth Claims to $6,662,468. (Parsons's CSF ¶ 21.) For the purposes of this present Motion, the Court will reference the dollar amounts provided in the Motion.

Parsons has rejected each of these claims by AE, and therefore Parsons cannot pass

the claims through to Covanta.  (Id. at 11-13.)  Conversely, Parsons contends that it

properly provided Covanta with adequate notice of the Disallowed Claims.  (Mem.

in Opp'n to Mot. re Disallowed Claims at 28-30.)

II.    PROCEDURAL BACKGROUND

On September 16, 2013, AE filed suit against Parsons, alleging claims

for breach of contract and unjust enrichment, based on Parsons's alleged refusal to

pay for the additional work.  (Doc. no. 1.)  AE subsequently amended its

Complaint on September 24, 2013 (the "AE Complaint").  (Doc. no. 5.)  On

January 22, 2014, Parsons filed its Third-Party Complaint against Covanta, and

Covanta filed a counterclaim against Parsons.  (Doc. nos. 25, 53, 103.)

Around the same time that Covanta filed its counterclaim against

Parsons, it filed its own Complaint in a separate action against Parsons, which it

amended on August 15, 2014 (the "Covanta Complaint").  (Doc. no. 1 in 14-cv-

00020 ACK-RLP; Doc. no. 102 in 13-cv-00471 SOM-BMK.)  On March 21, 2014,

---

[4] In its memorandum in opposition, Parsons refers to CORs 280, 281, 282,
283, and 287 as "Growth Claims," and groups the "Outstanding FCR" claims into
"Category 5" and "Category 6" claims.  (Mem. in Opp'n to Mot. re Disallowed
Claims at 11-13.)  Parsons admits that it did not pass the Category 5 and 6 claims
on to Covanta.  (Id. at 14-15.)  The Court will collectively refer to CORs 280, 281,
282, 283, and 287 as the "Growth Claims," and the remaining claims as the
"Outstanding FCRs."

Parsons filed its answer to the Covanta Complaint and asserted a counterclaim against Covanta and a counterclaim against American Electric. (Doc. no. 51.) Covanta additionally filed a counterclaim against Parsons on March 31, 2014. (Doc. no. 53.)

The Covanta Complaint is substantially similar to the counterclaim against Parsons. First, Covanta seeks to require Parsons to defend and indemnify it against AE's claims and to pay fees and costs already incurred. (Covanta Compl. at 30.) Second, Covanta seeks liquidated damages provided for under the Contract. (Id. at 29.) Third, Covanta seeks a declaratory ruling that change orders or claims that were not timely submitted under either the Contract or Subcontract are time barred and/or otherwise waived. (Id. at 27-29.)

The two cases were consolidated into one action before this Court on or around February 24, 2014. (Doc. no. 12 in 14-cv-00020 ACK-RLP.) Having all relevant parties and claims before it, the Court was presented with Parson's Motion for Declaratory Ruling Regarding Notice and for Partial Summary Judgment. (Doc. no. 56.) Parsons requested a declaratory ruling that the terms of the Contract and Subcontract regarding notice and claim procedures are strictly enforceable under Hawaii law, and further that the Court dismiss claims by AE that were allegedly waived or failed to comply with the applicable notice and claims

procedures.  The Court denied that motion by order dated June 4, 2014, holding

that summary judgment was not appropriate at that time, because there were

genuine issues of material fact regarding the parties' compliance with the notice

requirements.  (Doc. no. 76.)

Covanta now brings its present Motions before the Court, largely

repeating the arguments raised by Parsons with regard to AE's claims.  It further

requests that the Court hold that, based on the language in the Contract, Parsons

owes it a duty to defend and indemnify against Parson's claims based on AE's

allegations.

## STANDARD

Summary judgment is appropriate only where the Court determines

that there is no genuine issue of material fact and that the undisputed facts warrant

judgment for the moving party as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c)

(2010).  In assessing whether a genuine issue of material fact exists, courts must

resolve all ambiguities and draw all factual inferences in favor of the non-moving

party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>see also</u>

<u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1228 (9th Cir.

2000).  However, the non-moving party cannot rely upon conclusory allegations

unsupported by factual data to create an issue of material fact.  <u>Hansen v. United</u>

14

States, 7 F.3d 137, 138 (9th Cir. 1993).

In deciding a motion for summary judgment, the Court's function is not to try issues of fact, but rather to determine whether there are issues to be tried. Anderson, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

DISCUSSION

I.    MOTION FOR PARTIAL SUMMARY
      JUDGMENT RE DISALLOWED CLAIMS

The Court first addresses Covanta's Motion re Disallowed Claims, which requests that the Court hold, as a matter of law, that Parsons cannot assert "pass-through" claims against it. For the reasons discussed herein, the Court grants summary judgment as to the Outstanding FCRs, but denies summary judgment as to the remainder of that Motion because—even though Parsons has admitted that it denied AE's CORs at issue—there are disputes of material fact regarding whether Covanta received adequate notice of the Growth Claims. Moreover, the Court holds that a contractor can likely pass-through a subcontractor's claim during litigation, and there again exist genuine disputes of

material fact regarding whether Parsons properly brought such claims "on behalf of" AE. As such, summary judgment as to those issues is not warranted at this time.

A.      Parsons's and AE's Discovery Responses and Allegations

As a preliminary matter, the Court agrees with Covanta that certain of Parsons's and AE's discovery responses and statements in their pleadings can be deemed binding admissions. Rule 36 of the Federal Rules of Civil Procedure ("FRCP") states:

> **(b) Effect of an Admission; Withdrawing or Amending It.** A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Fed. R. Civ. P. 36(b) (2007). The advisory committee notes to Rule 36 provide that Rule 36 "give[s] an admission a conclusively binding effect, for purposes only of the pending action, unless the admission is withdrawn or amended. In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary

admission of a party." Id. (advisory committee notes) (citations omitted). "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." Id. (advisory committee notes) (citations omitted); see also Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n, 465 F.3d 1102, 1112 (9th Cir. 2006) ("the court and parties are bound by such admissions, which cannot be 'ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible'" (citation omitted)).

With regard to pleadings, as a general proposition, "[u]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well." Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 227 (9th Cir. 1988) (quoting Ferguson v. Neighborhood Housing Servs., 780 F.2d 549, 551 (6th Cir. 1986) (citations omitted)). But see Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859-60 (9th Cir. 1995) ("Where, however, the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight."). However, as opposed to a statement in a pleading,

"statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court." Am. Title Ins. Co., 861 F.2d at 227 (emphasis in original).

In the present case, to the extent Parsons or AE has clearly admitted certain facts in its response to Covanta's request for admissions and its pleadings, those facts can conclusively bind the admitting parties.  It does not appear that Parsons contests this point, as it addresses only the allegedly "elusive" discovery responses.  (See Mem. in Opp'n to Mot. re Disallowed Claims at 20-21.)  AE similarly does not address Covanta's argument that its admissions are "conclusively established."  (See generally AE's Mem. in Opp'n to Mot. re Disallowed Claims and Mot. re Duty.)  As such, the Court determines that Parsons and AE are bound by their admissions in discovery responses and pleadings.[5]

However, Covanta also seeks to conclusively bind Parsons where the latter's discovery responses were allegedly evasive and evidenced a lack of good faith.  (See Mot. re Disallowed Claims at 23-27.)  Covanta argues that certain of Parsons's responses to Covanta's requests for admissions are inconsistent with Parsons's position taken elsewhere and do not logically comport with other

---

[5] The subject admissions are identified in the Motion re Disallowed Claims and relate to Parsons's handling of the Disallowed Claims.  (Mot. re Disallowed Claims at 11-13.)

admissions.  (Id.)  In support of its position, Covanta cites two district court cases from other circuits in which the courts deemed discovery answers admitted when the responding parties acted in bad faith or abused the discovery process.  (Id. at 23.)

In the present case, however, the Court declines to impose on Parsons such a drastic punishment.  Parsons represents that "Covanta's motion is the first notice Parsons has received indicating that Covanta took issue with any of these discovery responses." (Mem. in Opp'n to Mot. re Disallowed Claims at 20.) Assuming Parsons's statement is true, it would be unfair for the Court to deem the disputed discovery responses admitted, given that Parsons was never given notice that Covanta found the responses insufficient or given an opportunity to clarify or correct its answers.  Certainly, there is not enough in the record for the Court to determine that Parsons has acted in bad faith with regard to its discovery responses or otherwise abused the discovery process, merely because Covanta unilaterally determined that it received unsatisfactory answers.  Cf. Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007) ("*Unanswered* requests for admissions may be relied on as the basis for granting summary judgment." (emphasis added)).  As such, for the purposes of the present Motions, Parsons's allegedly "evasive" discovery responses cannot be deemed admitted against Parsons.

B.    The Viability of the "Disallowed Claims"

Having determined that certain discovery admissions are binding on Parsons, the Court next considers the gravamen of the Motion re Disallowed Claims, i.e., whether Parsons may assert the Disallowed Claims against Covanta. The parties argue, somewhat confusingly, the viability of the Disallowed Claims in both the context of the COR process, as well as in the context of the present litigation.  In the interest of clarity, the Court considers each issue separately. First, the Court addresses the argument that Parsons did not follow the proper COR or Claims procedure during the construction of the Project by providing Covanta with untimely or insufficient documentation.  Second, the Court looks to whether, as a part of this litigation, Parsons is precluded from asserting AE's claims as "pass-through" claims against Covanta.

1.    COR and Claims Process Under the Contract

Covanta argues that Parsons did not adhere to Article 7, which defines the COR process, and Article 11, which defines the Claims process, and as a result, waived the ability to seek any change in the Contract price.  In response, Parsons argues that it did provide notice and fulfilled its obligations under the Contract.  In order to determine whether or not Parsons properly followed the COR process, the Court turns to the terms of the Contract.

Regarding the interpretation of a contract, the Hawaiʻi Supreme Court has stated that, "[a]s a general rule, the construction and legal effect to be given a contract is a question of law." Koga Eng'g & Constr., Inc. v. State, 122 Hawaiʻi 60, 72, 222 P.3d 979, 991 (2010) (citations omitted). "[A]bsent an ambiguity, [the] contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." Id. (some alterations in Koga) (quoting Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Hawaiʻi 487, 495, 78 P.3d 23, 31 (2003)). When interpreting a contractual provision, the court's goal is to determine the intention of the parties. Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Hawaiʻi 300, 304-05, 944 P.2d 97, 101-02 (Ct. App. 1997). "When the terms of a contract are definite and unambiguous there is no room for interpretation." Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984) (quoting H. Hackfield & Co. v. Grossman, 13 Haw. 725, 729 (1902)). If the parties use language that "leaves some doubt as to the meaning and intention[,]" however, then the court will "apply the rules of construction and interpretation in an effort to ascertain the intention of the parties to the contract." Id.

It is undisputed that, under the Contract, Covanta and Parsons agreed to the procedure for requesting change orders. It is further undisputed that the Contract provides the steps that Parsons was to follow when submitting a COR or

Claim on behalf of a contractor.  However, the parties differ as to whether Parsons

actually adhered to the proper process.

Under Article 7.2.2, Parsons "shall not be entitled to an increase in the

Contract Price . . . , except as specifically provided in this Article 7.  *A Change*

*Order,* approved in writing by Covanta, ***shall be a condition precedent to***

***contractor's right to an increase or decrease in the Contract Price*** or any

Completion Date."  (Contract art. 7.2.2 (emphasis added).)  As for the proper

notice procedure, Article 7.2.3 provides:

> Any request for a Change Order by Contractor under this
> Article 7 shall be made upon ***Notice to Covanta*** in
> accordance with Article 11.11[6] of this Contract ***within (7)***
> ***days*** of the commencement of the event giving rise to the
> request.  ***Within twenty (20) days of submission of***
> ***Notice to Covanta, Contractor shall submit a "Change***
> ***Order Request."***  Such Change Order Request shall be
> accompanied by a detailed description of the
> circumstances and the specific reasons for the Change
> Order Request; a detailed itemization and substantiation
> of any requested adjustment in the Contract Price or any
> Completion Date; documentation, charts, graphs,
> photographs and reports, which bear on the change;
> specific reference to the provisions of this Contract and
> any other supporting data and information upon which
> Contractor intends to rely or which Covanta requests.
> Failure to provide Notice and/or to submit a Change

---

[6] Although Article 7.2.3 references Article 11.11, the latter is a provision on
nondiscrimination.  Instead, Article 11.12 concerns notice.

Order Request, including all required documentation, timely or otherwise in accordance with this Article 7 shall be deemed a waiver by Contractor of the right to seek any adjustment to the Contract Price or any Completion Date.

(Id. art. 7.2.3 (emphases added).) Thus, a plain reading of the Contract reveals that Parsons must (1) provide Covanta with notice[7] of the request within seven days of the event; and (2) submit a COR within 20 days of the initial notice, which must be accompanied by a detailed description, itemization and substantiation of the adjustments, documents, charts, graphs, and references to the applicable Contract provisions. (Id.)

Separate and apart from the COR process, there is a mechanism for Parsons to submit a claim on behalf of a subcontractor. If Parsons asserts a "Claim," meaning "a written demand proposing specific relief or remedy to an issue or dispute arising out of or relating to [the] Contract, the breach, the termination of, or validity of this Contract, the Contract Documents or the Work, including all contract claims, claims, equitable claims, claims for an extension of

---

[7] In terms of notice, Article 11.12 requires that "All Notices, consents and approvals required or permitted by this Contract shall be in writing and shall be sufficient when delivered or transmitted by recorded express delivery . . . or registered or certified mail, return receipt requested, with Notice deemed to have been given upon receipt . . . ." (Id. art. 11.12.)

time and claims brought by Contractor, on behalf of a subcontractor, against

Covanta[,]" then it must "submit a 'Notice of Claim,' together with supporting

documentation . . . within thirty (30) days of the event giving rise to the Claim."

(Id. art 11.5.2.)

### 2. Parsons's Notice to Covanta of AE's Requests

Based on the plain language of the Contract, the Court must determine

whether the facts show that Parsons did not adhere to Articles 7.2.3 and 11.5.2 of

the Contract. Parsons and Covanta are two sophisticated parties that presumably

read and understood the provisions regarding the COR and Claims process. It

appears that Parsons was required to provide certain types of notice and

documentation to Covanta within prescribed amounts of time. The Court

acknowledges that, under the Contract, Parsons must provide sufficient notice to

Covanta regarding AE's claims, but it is unable to say that only strict adherence to

the Contract terms satisfies these requirements. Under a liberal interpretation of

the Contract, the notice and documentation provided here by Parsons may be

sufficient.[8]

---

[8] In its previous ruling denying Parsons's Motion for Declaratory Ruling and
for Partial Summary Judgment, the Court stated that, although it believed that
Hawaii courts would adopt a purpose-based interpretation of contractual notice and
claim provisions, unlike the strict interpretation urged here by Covanta, it was

Regardless of whether a strict or liberal interpretation is applied, the Court finds that there are genuine disputes of material fact concerning whether the documentation that Parsons provided to Covanta constituted timely and adequate notice of certain claims under the Contract. Covanta argues that the Contract requires that CORs must be timely submitted, yet Parsons admitted (1) that it did not submit any COR to Covanta regarding the outstanding FCRs at issue and (2) that it rejected each of the other Disallowed Claims, so could not have submitted those CORs to Covanta. Covanta points to Parsons's various discovery responses and pleadings, arguing that each of the identified CORs was not submitted to Covanta in accordance with the Contract. (Mot. re Disallowed Claims at 11-13, 17-18, 20-22.)

In response, Parsons argues that Covanta did receive notice of certain claims and even provided written acknowledgement of those claims. (Mem. in Opp'n to Mot. re Disallowed Claims at 28-29.) While Parsons admits that it

_____

unnecessary to reach that ultimate conclusion, because genuine factual disputes precluded summary judgment. (Order Denying Mot. for Declaratory Ruling and for Partial Summ. J. at 14-17.) The Court's analysis is applicable to the present motion, as well; although the Court still finds it likely that Hawaii courts would adopt a liberal construction of notice provisions, it need not make that determination here, as the Court denies summary judgment for the reasons discussed herein. Under either a strict or liberal interpretation of the Contract, the Court cannot say that Parsons did not comply with Articles 7 and 11.

rejected some of AE's requests, it argues that it provided Covanta with proper

notice of CORs 280, 281, 282, 283, and 287 (i.e., the "Growth Claims"), totaling

$5,851,600.  (Id. at 7-12.)  Parsons points to correspondence, meetings, and written

receipts as evidencing Covanta's acknowledgements of the claims.  (Id. at 28-30.)

Parsons concedes that it did not pass certain change requests on to Covanta

(identified by Covanta as the "Outstanding FCRs"), which it has grouped into

"Category 5" and "Category 6" claims totaling $510,899.  (Id. at 12-15.)  The

Court considers each of these arguments in turn.

### a.  The Outstanding FCRs

First, there does not seem to be any dispute that Parsons did not

provide Covanta with notice, much less documentation, of the Outstanding FCRs.

Parsons stated in its Answer to Covanta's First Amended Complaint that it

"acknowledges and therefore admits that it has rejected specific claims asserted by

American Electric due to a lack of information or substantiation provided by

American Electric."  (Covanta's CSF, Exh. D ¶ 40.)  It admits that the Outstanding

FCRs "have not been passed-through to Covanta for consideration."  (Id.)  For

each of the identified Outstanding FCRs, Parsons admitted that it "did not issue a

notice of change or a change order request to Covanta relative to the claims[s]

identified by AE . . . ."  (Covanta's CSF, Exh. F ¶¶ 99 (COR 35), 101 (COR 57),

26

103 (COR 91), 105 (COR 99), 107 (COR 101), 109 (COR 111), 112 (COR 113),

114 (COR 117), 116 (COR 126), 117 (COR 132), 118 (COR 136), 119 (COR 138),

120 (COR 139), 122 (COR 142), 124 (COR 144), 126 (COR 157), 127 (COR 178),

131 (COR 179), 135 (COR 187), 139 (COR 191), 140 (COR 194), 141 (COR 202),

144 (COR 206), 147 (COR 208), 148 (COR 211), 149 (COR 212), 150 (COR 215),

151 (COR 219), 152 (COR 220), 154 (COR 223), 155 (COR 232), 158 (COR 233),

159 (COR 237), 160 (COR 239), 161 (COR 249), 163 (COR 251), 164 (COR

286)).[9] Parsons admits that the "Category 5 Claims" "were never submitted to

Covanta due to a lack of substantiation or documentation." (Parsons's CSF ¶ 22.)

Additionally, it acknowledges that the "Category 6 Claims" "relate only to matters

between Parsons and AE" and do not concern Covanta. (Id. ¶ 24.)

Therefore, the Court GRANTS the Motion re Disallowed Claims as to

the Outstanding FCRs (with the exception of COR 227), which were denied by

Parsons for various reasons and never presented to Covanta for its review. Parsons

cannot now assert these claims against Covanta, as it failed to comply with Articles

7 and 11 of the Contract. These claims are thus DISMISSED against Covanta.

---

[9] The Court notes that Covanta provides no evidence that Parsons denied and did not present COR 227 to Covanta. Although Covanta lists COR 227 as an "Outstanding FCR," it acknowledges that it "includes CR 227 in reference[ ] to AE's Delay/Extended Overhead Claim." (Mot. re Disallowed Claims at 10 n.4.)

b.    The Growth Claims (CORs 280, 281, 282, 283, 287)

Second, the so-called "Growth Claims," which make up the bulk of the Disallowed Claims, are at the center of the parties' dispute.  For each of these claims, Covanta provides the Court with Parsons's admissions that it denied the particular Growth Claim.  The "Delay/Overhead" claim (including COR 280) was allegedly denied on or around January 7, 2013, because Parsons determined that the claim lacked substantiation.  (Covanta's CSF, Exh. F ¶¶ 35-38.)  Parsons admitted that it denied COR 281 for Additional Conduit Scope Growth on or around January 21, 2013 because it allegedly lacked substantiation and was untimely.  (Id. ¶¶ 7-11.)  Parsons also admitted that it similarly denied COR 282 for Additional Wire Scope Growth on or around January 21, 2013.  (Id. ¶¶ 18-22.) Parsons admitted that it denied COR 283 for Additional Fitting Scope Growth on or around January 29, 2013 for the same reasons.  (Id. ¶¶ 28-32.)  Finally, as to the "Additional Supervision" claims in COR 287, Parsons also denied those claims.[10]

_____

[10] The Court also notes that, in its answers to interrogatories in Exhibit F to Covanta's CSF, Parsons denies denying the Additional Supervision claim, stating that it cannot locate any correspondence in which it specifically denied AE's claim. (Covanta's CSF, Exh. F ¶ 55.)  However, regardless of whether Parsons admitted or denied denying the Additional Supervision claim, the Court's conclusion is the same, insofar as there is a dispute of material fact whether Parsons provided adequate notice of that claim to Covanta.

(Covanta's CSF, Exh. I ¶¶ 55-59.)  In its memorandum in opposition, Parsons appears to concede that it denied the Growth Claims.  (Parsons's CSF, Decl. of Michael Swartz ¶ 10.)

However, despite its denial of the Growth Claims, Parsons contends that it still gave proper notice to Covanta of those claims such that it complied with the Contract.  (Mem. in Opp'n to Mot. re Disallowed Claims at 28-30.)  It claims that AE presented it with notice of the Growth Claims on September 5, 2012, and Parsons thereafter forwarded notice of those claims to Covanta on September 10, 2012.  (Parsons's CSF, Exh. I.)  Parsons informed Covanta that, "[p]ursuant to Contract Section 7.2.3 Change Orders, Parsons hereby notifies Covanta Energy that American Electric is seeking additional compensation related to electrical scope growth."  (Id.)  Parsons represented that AE would submit further information, and thereafter Parsons would assign a COR number.  (Id.)  However, before Parsons could assign a COR number, Covanta rejected those claims by letter dated September 12, 2012, stating that the claims were "untimely and unsubstantiated."  (Parsons's CSF, Exh. J.)  Covanta chastised Parsons for forwarding AE's claims when it appeared that Parsons had already rejected them. (Id.)

Moreover, Parsons argues that Covanta received further notice of the

claims on March 11, 2013, when it forwarded AE's March 7, 2013 letter to Parsons in an e-mail titled "Notice of Claim" to Covanta's project manager. (Parsons's CSF, Exhs. L, M.) The letter from AE contained a spreadsheet of the various outstanding change orders totaling $12,575,471.44. (Parsons's CSF, Exh. L.) Covanta allegedly acknowledged receipt of the e-mail that same day. (Parsons's CSF, Decl. of Julie Sankey ("Sankey Decl.") ¶ 7.) However, by letter dated March 14, 2013, Covanta responded by informing Parsons that it is not to submit unsubstantiated or untimely claims, and, if the claims have any merit, then Parsons is to address any claim that AE has against it. (Parsons's CSF, Exh. N.)

Parsons additionally argues that Covanta was put on notice of the Growth Claims when the three parties convened on February 6, 2013 to discuss resolving the outstanding CORs relating to AE's work. (Mem. in Opp'n to Mot. re Disallowed Claims at 29; Parsons's CSF, Sankey Decl. ¶ 6.)

After a careful review of the discovery responses and pleadings relied upon by Covanta and the correspondence and documentation relied upon by Parsons, the Court cannot hold, as a matter of law, the Parsons did not comply with Articles 7.2.3 and 11.5.2. Parsons's discovery responses and pleadings, which the Court agrees establish that Parsons denied the Growth Claims, nevertheless show

that Parsons submitted AE's requests to Covanta.[11]  Parsons further provides

documentation that Covanta received the information concerning the Growth

Claims and, for various reasons, summarily rejected them.  Covanta claims that the

CORs were untimely or unsubstantiated under the terms of the Contract, but there

is not enough evidence before the Court to make that determination.  Without

further information, the Court cannot say that the method of notice provided by

Parsons is insufficient under the Contract, or that the documentation provided by

Parsons is deficient, such that Parsons is precluded from asserting the Growth

Claims.

Therefore, given the factual discrepancies at hand, the Court HOLDS

that a genuine dispute of material fact exists that would preclude summary

judgment on the Growth Claims, and the Court will not rule, as a matter of law,

that Parsons failed to follow the terms of the Contract regarding the Growth

Claims.  In particular, the Court lacks sufficient facts to determine whether

---

[11] The Court additionally notes that, although Covanta repeatedly claims that Parsons must admit liability on the Disallowed Claims before passing them on to Covanta, it is unable to locate any provision in the Contract that evidences such a requirement in the COR or Claims process.  Rather, Covanta only points to the general requirement that Parsons must "[p]rotect Covanta's interests by mitigating potential and/or actual claims by contractors on the Site."  (Contract, Exh. E § 01035 ¶ G.)  The cases cited by Covanta in support of its argument relate to a pass-through-claim lawsuit, not a COR process.

Covanta was provided sufficient and timely notice of the Growth Claims under Articles 7 and 11 of the Contract. As such, summary judgment on the Growth Claims is DENIED.

Moreover, the Court agrees with Parsons that the Court's previous ruling on Parsons's Motion for Declaratory Ruling and for Partial Summary Judgment is applicable here. As noted in its June 4, 2014 order, there is a possibility that "negligence and breach on the part of Parsons . . . may have rendered AE's compliance with the Subcontract impossible. If the nature of the project and the manner in which Covanta/Parsons directed AE's work effectively prevented AE from understanding the true extent of Project changes and their subsequent impact on AE's costs, the question arises as to when the clock would begin to tick on any notice requirements." (Order Denying Mot. for Declaratory Ruling and for Partial Summ. J. at 14-17.) In other words, there may be external factors affecting the notice that Parsons provided to Covanta, and the Court holds that there are too many factual questions here to warrant summary judgment.

Finally, it is somewhat unclear to the Court whether Parsons was presenting AE's claims to Covanta as a "Change Order Request" under Article 7.2.3, or as a "Claim" under 11.5.2. Although, in the final analysis, this may not make any difference, the parties should clarify whether the disputed issues concern

Parsons's alleged failure to follow the COR procedure, the Claims procedure, or both.

3.     Parsons's Assertion of AE's Pass-Through Claims

Next, assuming, *arguendo*, that Parsons followed the proper COR and Claims procedure, the Court considers whether Parsons may allege "pass-through" claims against Covanta in this present litigation.  Although not seemingly addressed by the Ninth Circuit or Hawaii courts explicitly, a pass-through claim is essentially a claim based upon a subcontractor's cause of action against a contractor, which the contractor then "passes through" to the project owner, who is allegedly liable for the injury.  In California, the courts there have stated that:

> Pass-through or representative claims are claims asserted by a prime contractor on behalf of a subcontractor against the other party to the prime contract (typically a government project owner). (Howard Contracting, Inc. v. G.A. MacDonald Construction Co. (1998) 71 Cal. App. 4th 38, 60, 83 Cal. Rptr. 2d 590; Calvert et al., Pass Through Claims and Liquidation Agreements (Oct. 1998)[;] 18 Construction Lawyer 29; Kester et al., Subcontractor Pass Through Claims and Sponsorship Litigation (Sept. 2003) Construction Briefings No. 2003-9.)  Pass-through claims originated as a means of compensating lower tier subcontractors on public works projects who suffered damages as the result of governmental agency delays or misconduct but had no claim against the government contractor, either in tort because of governmental immunity or in contract because of a lack of privity.

33

(Kates, [F]acilitating Subcontractor's Claims Against the Government through the Prime Contractor as the Real Party in Interest (1983) 52 Geo. Wash. L. Rev. p. 146, fn.4.)

Superior Gunite v. Mitzel, 117 Cal. App. 4th 301, 314, 12 Cal. Rptr. 3d 423, 432-33 (Cal. App. 2d Dist. 2004); see also Interstate Contracting Corp. v. City of Dallas, 135 S.W.3d 605, 610 (Tex. 2004) ("A pass-through claim is a claim (1) by a party who has suffered damages . . . ; (2) against a responsible party with whom it has no contract . . . ; and (3) presented through an intervening party . . . who has a contractual relationship with both.").

      a.      Validity of Pass-Through Claims in Hawaii

Covanta argues that Parsons has no basis in law or contract for remaining neutral in this dispute and "passing through" AE's claims to Covanta. (Mot. re Disallowed Claims at 2.) Specifically, it takes the position that the Contract does not allow pass-through claims, as Parsons's failure to submit a COR—the only contractual vehicle by which Parsons can request an increase in the Contract price—precludes it from now asserting claims against Covanta. (Id. at 27.) Additionally, Covanta argues that, although Hawaii law does not specifically address pass-through claims, courts in other jurisdictions have made clear that "an essential element required for a general contractor to have standing

to bring a pass-through claim on behalf of a subcontractor is an admission of liability by the general contractor to the subcontractor." (Id. (emphasis omitted) (citations omitted).) Covanta contends that, because Parsons has allegedly denied liability on all of AE's claims against it, it cannot pass through those claims to Covanta. (Id. at 28-29.)

In response, Parsons argues that pass-through claims are routinely permitted against a project owner, even when a contractor has not admitted liability to the subcontractor. (Mem. in Opp'n to Mot. re Disallowed Claims at 21-22.) Parsons argues that Covanta misconstrues the cases cited in its own motion, many of which are inapplicable to the case at hand. (Id. at 22-26.) Rather, Parsons states that other district courts within the Ninth Circuit have held that pass-through claims are permissible. (Id. at 22 n.4.) AE echoes many of Parsons's arguments. (See AE's Mem. in Opp'n to Mot. re Disallowed Claims and Mot. re Duty at 2-6.)

Given the foregoing arguments, the Court first determines that Hawaii courts would likely recognize the existence of pass-through claims, based on the well-developed law in other jurisdictions. In California, for example, the courts there have clearly recognized the validity of pass-through claims:

As a matter of law, a general contractor can present a subcontractor's claim on a pass-through basis. (Maurice L. Bein v. Housing Authority (1958) 157 Cal.

> App. 2d 670, 321 P.2d 753.) When a public agency
> breaches a construction contract with a contractor,
> damage often ensues to a subcontractor. In such a
> situation, the subcontractor may not have legal standing
> to assert a claim directly against the public agency due to
> a lack of privity of contract, but may assert a claim
> against the general contractor. In such a case, a general
> contractor is permitted to present a pass-through claim on
> behalf of the subcontractor against the public agency.
> (D.A. Parrish & Sons v. County Sanitation Dist. (1959)
> 174 Cal. App. 2d 406, 344 P.2d 883.)

Howard Contracting, Inc. v. G.A. MacDonald Constr. Co., Inc., 71 Cal. App. 4th

38, 60, 83 Cal. Rptr. 2d 590, 602 (1998).

Similarly, in Interstate Contracting Corp., the Supreme Court of Texas

discussed the development of pass-through claims in federal and state courts. It

noted that, "[i]n breach of contract actions against the federal government,

contractors have long been permitted to present subcontractors' claims on a pass-

through basis against the government, even though the no-privity rule would

otherwise bar subcontractors from recovering directly against the government."

Interstate Contracting Corp., 135 S.W.3d at 610-11 (citations omitted). "The

federal pass-through procedure has become the standard method by which such

claims are resolved." Id. at 611 (citations omitted). Indeed, under this doctrine,

"as long as the general contractor remains liable to the subcontractor for the

subcontractor's damages, the general contractor can bring an action against the

36

government for the subcontractor's damages." Id. (citations omitted).[12]  The Court

agrees that the reasoning of the above-cited cases is sound.  As such, the Court

holds that pass-through claims are well established in federal law and would likely

be adopted by Hawaii courts.

Moreover, it appears that Covanta and Parsons contemplated the

possibility of pass-through claims against Covanta, even though the parties did not

use the express term "pass-through claims."  Article 11.5 of the Contract provides

that:

> Either Party may make a "Claim," which shall mean a
> written demand proposing specific relief or a remedy to
> an issue or dispute arising out of or relating to this
> Contract, the breach, the termination of, or validity of
> this Contract, the Contract Documents or the Work,
> including all contract claims, equitable claims, claims for
> an extension of time ***and claims brought by Contractor,
> on behalf of a subcontractor***, against Covanta, all of
> which will be handled in accordance with this Article
> 11.5.

(Contract art. 11.5.2 (emphasis added).)  That the parties to the Contract explicitly

recognized that Parsons may bring claims against Covanta on behalf of a

subcontractor appears to suggest that the parties contemplated the existence of

---

[12] The Texas Supreme Court tracked the development of the pass-through doctrine through federal and state courts, additionally noting that, of the 19 states that have addressed pass-through claims, only one state (Connecticut) explicitly rejects them.  Id. at 613-14.

pass-through claims.

      b.    <u>Parsons's Admission of Liability on AE's Claims</u>

The Court similarly disagrees with Covanta's contention that Parsons's refusal to admit liability to AE on the Disallowed Claims precludes it from asserting those claims against Covanta. Under the so-called "<u>Severin</u> Doctrine," "a prime contractor may not sue the government for contract damages incurred by a subcontractor unless the prime contractor remains potentially liable to the subcontractor for those same damages." <u>Harper/Neilsen Dillingham, Builders, Inc. v. United States</u>, 81 Fed. Cl. 667, 669 n.2 (2008) (citing <u>Severin v. United States</u>, 99 Ct. Cl. 435, 443 (1943), <u>cert. denied</u>, 322 U.S. 733 (1944)). "In determining whether a prime contractor is liable to the subcontractor for purposes of the <u>Severin</u> doctrine, 'damages are not limited to payments actually made to subcontractors but can include *potential liability*.'" <u>Id.</u> (emphasis in original) (quoting <u>C & H Commercial Contractors, Inc. v. United States</u>, 35 Fed. Cl. 246, 257 (1996)). In other words, this type of lawsuit "may be maintained only when the prime contractor has reimbursed its subcontractor for the latter's damages ***or remains liable for such reimbursement in the future***." <u>George Hyman Constr. Co. v. United States</u>, 30 Fed. Cl. 170, 174 (1993) (emphasis added) (quoting <u>J.L. Simmons Co. v. United States</u>, 158 Ct. Cl. 393, 304 F.2d 888-89 (1962)).

As such, the most that can be said is that Parsons must remain potentially liable to AE for it to assert pass-through claims against Covanta. The few cases cited by Covanta in support of its position that Parsons must explicitly deny liability appear to be in the minority.[13] (See Mot. re Disallowed Claims at 27-28.) Even George Hyman Construction Co., cited by Covanta, at most stands for the proposition that Parsons need only remain potentially liable for AE's damages in the future.[14] Rather, it appears that the majority rule merely requires the possibility that Parsons may be liable to AE in order to pass through the claims to Covanta. Furthermore, the Court also notes that Article 11.5.2 of the Contract,

---

[13] Covanta's citation to Wexler Construction Co. v. Housing Authority of Town of Norwich, 183 A.2d 262, 264 (Conn. 1962), is unpersuasive, as Connecticut appears to be the only jurisdiction that explicitly rejects pass-through claims unless the contractor admits liability and impleads the project owner. See Interstate Contracting Corp., 135 S.W.3d at 614 n.6. Similarly, its reliance to two Southern District of New York cases, Travelers Casualty and Surety Co. v. Dormitory Authority – State of New York, 735 F. Supp. 2d 42 (S.D.N.Y. 2010), and Honeywell, Inc. v. J.P. Maguire Co., Inc., No. 93 CIV. 5253 DABHBP, 2000 WL 307398 (S.D.N.Y. Mar. 23, 2000), is also misplaced, as those two cases are factually distinguishable, and the requirement of an admission of liability appears to be the minority position.

[14] Although the United States Court of Federal Claims ultimately held that the contractor could not pass through the subcontractor's claims against it to the United States, the court's analysis was informed by the subcontractor's release of all claims against the contractor. Thus, because the subcontractor had agreed that the contractor was not liable to it, the contractor could not assert any of the subcontractor's claims. See George Hyman Constr. Co., 30 Fed. Cl. at 175-77.

seemingly allowing Parsons to pass through AE's claims to Covanta, does not memorialize any requirement that Parsons first admit liability to the subcontractors whose claims it would assert.

c.      Claims Brought "on Behalf of" AE

Having first determined that Parsons may assert pass-through claims against Covanta, the Court now considers whether, as Covanta argues, Parsons fails to assert those claims in this litigation "on behalf of" AE.  In other words, even if pass-through claims are permissible, Covanta argues that "Parsons' pleadings do not assert that Parsons' claims are being brought on American Electric's behalf.  Nor could they, since Parsons is being sued by American Electric on those very same claims and has clearly and unequivocally admitted that it has denied the very same claims as untimely and unsubstantiated."  (Reply at 4.) In other words, Covanta focuses on whether Parsons is asserting the pass-through claims "on behalf of" AE, as opposed to in its own right.  (Id. at 15.)  Covanta further argues that Parsons's suit against Covanta is comprised of "Parsons's *own claims*, which arise from Covanta's own acts or omissions."  (Id. at 16 (emphasis in original).)  Because this particular argument was raised in the Reply, Parsons did not have an opportunity to submit a written response, and it did not directly address this argument during the hearing on the Motions.

Although Parsons admits that it is prosecuting its "own claims," it claims that it is also asserting AE's causes of action against Covanta, since AE lacks contractual privity and cannot assert such claims against Covanta. Covanta argues that Parsons's and AE's interests are at odds with each other, but it provides no authority standing for the proposition that the two entities must cooperate with each other or that Parsons must have the consent of its subcontractor. (See Reply at 4-5.) In other words, Covanta's bald assertion that "Parsons cannot 'pass-through' claims against which it is simultaneously defending" is completely unsupported. (Id. at 4.) Given the lack of legal authority and argument before the Court regarding the interpretation of "on behalf of," the Court is unable to say, as a matter of law, that Parsons did not bring the Disallowed Claims on AE's behalf.

Moreover, the factual record is not clear regarding Parsons's actions "on behalf of" AE. Even assuming, arguendo, that Covanta is correct and Parsons cannot bring claims on behalf of an uncooperative party, the Court cannot determine whether Parsons failed to act on behalf of AE in asserting the Disallowed Claims. On the one hand, the Subcontract provides for Parsons's ability to assert AE's claims as pass-through claims against Covanta. The Subcontract does contemplate (1) a dispute between Parsons and Covanta concerning AE's work, and (2) a dispute between Parsons and AE arising out of

41

Covanta's conduct:

> In the event of any dispute or claim between
> CONTRACTOR and OWNER which directly or
> indirectly involves the work performed or to be
> performed by SUBCONTRACTOR, or in the event of
> any dispute or claim between CONTRACTOR and
> SUBCONTRACTOR caused by or arising out of conduct
> for which OWNER may be responsible,
> SUBCONTRACTOR agrees to be bound to
> CONTRACTOR and CONTRACTOR agrees to be
> bound to SUBCONTRACTOR . . . .

(Subcontract § 4.3 ¶ 3.)  Moreover, the Subcontract provides that, ***"[i]f any dispute or claim of SUBCONTRACTOR is prosecuted or defended by CONTRACTOR*** together with disputes or claims of CONTRACTOR'S own, ***and the SUBCONTRACTOR is not directly a party***, SUBCONTRACTOR agrees to cooperate fully . . . ."[15]  (Id. (emphases added).)  Thus, the Subcontract not only allows Parsons to assert AE's claims as pass-through claims against Covanta, but it contemplates that AE will not be a party to that action and that Parsons may also assert its own claims against Covanta.

On the other hand, there are no facts before the Court regarding

---

[15] Whether AE properly cooperated with Parsons under the terms of the Subcontract is a separate matter not currently before the Court.  Presently at issue is whether Parsons may, under the terms of the Contract and Subcontract, assert AE's pass-through claims against Covanta.

whether Parsons brought the Disallowed Claim "on behalf of" AE, including

whether Parsons and AE have complied with the terms of the Subcontract such that

Parsons could assert claims on behalf of AE.  The Court recognizes that Parsons's

Motion for Summary Judgment against AE over the latter's alleged breach of the

Subcontract is the subject of a separate motion not currently before the Court.  The

Court thus DENIES the Motion re Disallowed Claims as to the issue of Parsons's

ability to assert the Disallowed Claims on behalf of AE, given that (1) no party has

presented the Court with any authority with which to construe the phrase "on

behalf of," and (2) the factual record is unclear whether or not Parsons failed to

assert the Disallowed Claims "on behalf of" AE.  The Court may later take up this

issue in connection with Parsons's Motion for Partial Summary Judgment against

Plaintiff American Electric Co., LLC Related to its Claim for Breach of Contract

as Alleged in its Amended Complaint and Request for Declaratory Ruling on

Entitlement to Attorneys' Fees and Costs.  (Doc. no. 192.)

Based on the foregoing, the Court determines that Hawaii courts

would likely recognize pass-through claims and would not, as a prerequisite,

require that the contractor admit liability on the subcontractor's claims.  However,

there is insufficient legal authority and facts before the Court to allow it to

determine that Parsons is not asserting the Disallowed Claims "on behalf of" AE,

and the Court DENIES the Motion re Disallowed Claims as to the pass-through

claims. Therefore, for the reasons stated above, the Court GRANTS IN PART and

DENIES IN PART the Motion re Disallowed Claims.

II.    MOTION FOR PARTIAL SUMMARY JUDGMENT
       RE PARSONS, RCI, INC.'S DUTY TO DEFEND AND,
       <u>WITH RESPECT TO THE DISALLOWED CLAIMS, TO INDEMNIFY</u>

        Next, regarding Covanta's Motion re Duty, the Court addresses

whether, as a matter of law, Parsons owes Covanta a duty to defend and/or

indemnify it. Based on the current record before this Court, the Contract is

ambiguous, and there is a genuine issue of material fact regarding the parties'

intent concerning the indemnification provisions in the Contract. Furthermore, the

Court has denied the Motion re Disallowed Claims, thus rendering moot Covanta's

arguments regarding the duty to indemnify. As such, the Court DENIES the

Motion re Duty in its entirety.

A.    <u>Parsons's Duty to Defend</u>

        First, the Court considers whether Parsons breached its duty to defend

Covanta. This district court has aptly summarized the rule regarding the duty to

defend in Hawaii:

>     Under Hawai'i law, private indemnity contracts are
>     interpreted according to the same principles as insurance
>     contracts. <u>See</u> <u>Pancakes of Hawaii v. Pomare Properties</u>

44

Corp., 85 Hawai'i 286, 291, 944 P.2d 83, 88 (App. 1997) (expanding the duty to defend based on the complaint allegation rule to non-insurance indemnity contracts); see also City and County of Honolulu v. Churchill, 167 F. Supp. 2d 1143, 1157 (D. Haw. 2000) (holding that the duty to defend arising under an indemnity agreement should be analyzed just as if it had arisen under an insurance policy). In Pancakes, the Intermediate Court of Appeals incorporated the complaint allegation rule to apply to private indemnity contracts and observed that an indemnitor's duty to defend is broader than the duty to indemnify and must be determined at the onset of litigation using the complaint allegation rule. 85 Hawai'i at 291, 944 P.2d at 88. Under the complaint allegation rule, the duty to defend is triggered whenever the allegations of the complaint raise the possibility that the indemnitor may have a duty to defend. Id. at 294, 944 P.2d at 91 (holding that the duty to defend is triggered when "any of the allegations in the complaint potentially include conduct" that is covered by the indemnity contract). In addition, if there is a potential to defend against *any* of the claims raised in the complaint, the indemnitor must defend against all of the claims brought against the indemnitee. See id.

Shaughnessy v. KC Rainbow Devel. Co., LLC, Civ. No. 09-ACK-LEK, 2010 WL 157486, at 5 (D. Haw. Jan. 15, 2010) (emphasis in original) (internal footnote omitted). The first question the Court must answer is whether the Contract imposes on Parsons the duty to defend Covanta. If it does, the Court next inquires as to whether the duty was triggered by the allegations in this action.

Covanta takes the position that Articles 2.9.2 and 6.1.1 of the Contract

clearly require Parsons to defend and indemnify it against any claim relating to claims made by AE against either Covanta or Parsons.  Article 2.9.2 provides that "[Parsons] shall protect, defend, indemnify, save and hold harmless Covanta . . . from and against any and all loss, claims, damages and/or liability related to any such claim or suit made or commenced by any such subcontractor . . . against [Parsons or] Covanta . . . ."  (Contract art. 2.9.2.)  Covanta argues that Article 2.9.2 is valid under Hawaii law, so long as the provision contains "enough specificity to demonstrate that the indemnitor is 'fully cognizant' of the agreement it is making." (Mot. re Duty at 15 (citing <u>Servco Pac., Inc. v. Dods</u>, 193 F. Supp. 2d 1183, 1193 (D. Haw. 2002)).)  Covanta states that Parsons was "fully cognizant of its unqualified agreement to indemnify Covanta," and the "express and unequivocal language" of Article 2.9.2 "requires Parsons to defend and indemnify Covanta not only against subcontractor claims and allegations against Parsons, but also against subcontractor allegations and claims against ***Covanta***."  (<u>Id.</u> (emphasis in original).)

Moreover, Article 6.1.1 provides that "[Parsons] agrees, at its cost and expense, to protect, defend, save, indemnify and hold completely free and harmless Covanta . . . from and against any and all . . . claims . . . arising directly out of or related to the performance or nonperformance of the Work and this Contract

attributable to the negligence, error, omission willful misconduct, bad faith or lack

of due diligence, to the extent caused by [Parsons] . . . ." (Contract art. 6.1.1.)

Covanta argues that Article 6.1.1 is triggered if any of the claims are the result of

Parsons's negligence. (Mot. re Duty at 16-17.)

      Conversely, Parsons argues that the parties did not intend for Parsons

to indemnify Covanta against claims brought by Parsons. It argues that Article

2.9.2 is "nonsensical," given that it conflicts with Article 11.5, which

"contemplates a process by which claims by Parsons and Parsons' subcontractors

will be addressed." (Mem. in Opp'n to Mot. re Duty at 20.) Given the conflict,

Parsons argues that the two provisions are "incompatible and fundamentally at

odds with one another[,]" such that the Contract is ambiguous. (Id. at 23.) Parsons

argues that, because ambiguous contract terms are construed against the drafter of

the contract, Covanta, as the drafter, should not be allowed to enforce the

ambiguous provision. (Id. at 23-24.)

      Parsons further argues that Article 6.1.1 is inapplicable to the present

case, as none of the complaints allege theories of negligence or other tort claims

against any party. Rather, Covanta bases its argument on this Court's prior

holding, in which it stated that, "whether Parsons contributed to any AE failure to

provide notice, due to negligence, breach, or failure to follow industry standards

47

are questions of fact, which preclude summary judgment." (Id. at 27.)   However,

Parsons argues, the possibility of such defenses existing does not mean that any

party has asserted a tort claim.  (Id.)

> 1.    Contractual Ambiguity and Question of Fact Regarding Intent

It is a fundamental principle of contract law that "terms of a contract

should be interpreted according to their plain, ordinary and accepted use in

common speech, unless the contract indicates a different meaning."  Amfac, Inc. v.

Waikiki Beachcomber Inv. Co., 74 Haw. 85, 108, 839 P.2d 10, 24 (1992) (citations

omitted).   However, pursuant to the rule of reasonable construction, when:

> the language of the contract is contradictory, obscure or
> ambiguous, or where its meaning is doubtful so that it is
> susceptible of two constructions, one of which makes it
> fair, customary and such as prudent men [or women]
> would naturally execute, while the other makes it
> inequitable, unusual or such as reasonable men [or
> women] would not be likely to enter into, the
> interpretation [that] makes it a rational and probable
> agreement must be preferred.

Pancakes of Haw., Inc., 85 Haw. at 296 n.6, 944 P.2d at 93 n.6 (quoting Hawaiian

Pineapple Co. v. Masamari Saito, 24 Haw. 787, 799 (1919)).  Moreover, the Court

must avoid construing a contract in a way that would lead to an absurd result.  See

Canton Ins. Office v. Woodside, 90 F. 301, 303-04 (9th Cir. 1898) ("Where the

strict construction of the language of a contract will lead to such an unjust or

absurd result that it may be said that it was not within the reasonable contemplation of the parties to the contract, the court will avoid such a construction, and endeavor to ascertain the real intention of the parties, which, in a case of insurance having indemnity for its object, will be construed liberally to that end."); cf. State v. McKnight, 131 Hawai'i 379, 319 P.3d 298 (2013) ("Pursuant to established principles of statutory construction, the court will depart from a literal reading of a statute when the plain language results in an 'absurd or unjust result' and is 'clearly inconsistent with the purposes and policies of the statute.'" (citation omitted)).

In construing Hawaii law, the Ninth Circuit has stated, with respect to contractual ambiguity, that:

> [a]n ambiguous term is one susceptible to more than one reasonable interpretation. Port of Portland v. Water Quality Ins. Syndicate, 796 F.2d 1188, 1194 (9th Cir.1986); MPM Hawaiian Inc. v. World Square, 4 Haw. App. 341, 345, 666 P.2d 622, 626 (an ambiguity exists when there is some doubt as to the meaning of written words), rev'd on other grounds, 66 Haw. 675 (1983). The presence of an ambiguous material term may indicate that no meeting of the minds occurred when the document was signed. 1 Corbin, Contracts § 4.10 (1993); Restatement 2d of Contracts § 20 ("There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and . . . neither party knows or has reason to know the meaning attached by the other. . . .").

<u>Local Motion, Inc. v. Neischer</u>, 105 F.3d 1278, 1280 (9th Cir. 1997).

As a general rule, the Court will look no further than the four corners

of the contract to determine whether an ambiguity exists. <u>State Farm Fire & Cas.</u>

<u>Co. v. Pac. Rent-All, Inc.</u>, 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999) (noting

that the parties' disagreement as to the meaning of a contract does not render it

ambiguous). However, "[u]nder Hawaii law, 'extrinsic evidence . . . [may] be

considered by the court to determine the true intent of the parties if there is any

doubt or controversy as to the meaning of the language embodying their bargain.'

Ambiguity can exist within a contract even if no particular words or phrases are

themselves ambiguous." <u>Metzler Contracting Co. LLC v. Stephens</u>, 774 F. Supp.

2d 1073, 1082-83 (D. Haw. 2011) (quoting <u>Hokama v. Relinc Corp.</u>, 57 Haw. 470,

476, 559 P.2d 279, 283 (1977)).

## 2.    Construction of Articles 2.9.2 and 11.5

At the outset, the Court acknowledges that the plain language of

Article 2.9.2 seemingly insulates Covanta from any claim relating to a

subcontractor's claim.[16]    Article 2.9.2 provides that "[Parsons] shall protect,

---

[16] Conversely, Article 6.1.1 appears irrelevant to the present motion, as there are no allegations that any of the operative claims arise out of Parsons's or AE's "negligence, error, omission willful misconduct, bad faith or lack of due

defend, indemnify, save and hold harmless Covanta . . . from and against any and

all loss, claims, damages and/or liability related to any such claim or suit made . . .

by any such subcontractor . . . against" Parsons or Covanta. Certainly, Parsons's

claims against Covanta are "related to" a subcontractor's claims against it, as

Parsons has even admitted that its case against Covanta is based on the "passing

through" to Covanta of AE's claims. In other words, because Parsons seeks to

assert claims against Covanta that are related to AE's claims, Parsons ostensibly

must defend Covanta from such claims.

However, Parsons also directs the Court's attention to Article 11.5,

which provides the mechanism for which the parties may bring claims against each

other. Under Article 11.5:

> Either party may make a "Claim," . . . to an issue or
> dispute arising out of or relating to this Contract, the
> breach, the termination of, or validity of this Contract,
> the Contract Documents or the Work, including all
> contract claims, equitable claims, claims for an extension
> of time, and ***claims brought by Contractor, on behalf of
> a subcontractor, against Covanta***, all of which will be
> handled in accordance with this Article 11.5.

(Contract art. 11.5 (emphasis added).) Parsons argues that, when read together,

---

diligence[.]" (Contract art. 6.1.1.) AE only alleges Breach of Contract (Count I)
and Unjust Enrichment (Count II) in its First Amended Complaint. Accordingly,
the Court holds that Article 6.1.1 does not provide a basis on which to impose a
duty to defend on Parsons.

these two provisions create an ambiguity in the Contract.

When reading Articles 2.9.2 and 11.5, it appears that, on the one hand, the Contract specifically contemplates that Parsons may assert "claims . . . on behalf of a subcontractor, against Covanta." (Id. art. 11.5.) Here, it is possible that Parsons has properly asserted against Covanta, under a "pass-through" theory, AE's claims against Parsons. However, on the other hand, the Contract also provides that Parsons must defend and indemnify Covanta against any and all of Parsons's claims that are "related to" the subcontractor's claims. (Id. art. 2.9.2.) Taken together, this means that, if Parsons is ever to assert a claim against Covanta based on a subcontractor's claim, it must also assume a duty to defend, and thus Parsons must defend Covanta against Parsons's own lawsuit.[17]

The Court recognizes that "[i]t is the duty and responsibility of the courts, not to re-write contracts according to their own views of what is practical and fair, but to enforce them in accordance with the evidence and recognized principles of law." United States v. Bethlehem Steel Corp., 315 U.S. 289, 310 (1942). However, the Court finds that these two provisions, when read together, are ambiguous, and the enforcement of such would lead to an absurd and

---

[17] Taken to its next logical conclusion, Covanta's position also means that, even if Parsons prevails in such a lawsuit, Parsons must indemnify Covanta and, essentially, pay itself any damages award.

unreasonable result. Although the particular words themselves are unambiguous, the enforcement of Article 2.9.2 would render Article 11.5 meaningless in certain situations, as Parsons's express ability to sue Covanta and successfully recover damages arising out of a subcontractor's claim would be completely nullified. The Court finds it difficult to accept that this absurd result was the intent of the parties.

"When an ambiguity exists so that there is some doubt as to the intent of the parties, intent is a question for the trier of fact." Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Hawai'i 487, 78 P.3d 23 (2003) (citing Bishop Trust Co., Ltd. v. Central Union Church of Honolulu, 3 Haw. App. 624, 628, 656 P.2d 1353, 1356 (1983)). "Where ambiguity exists, summary judgment is usually inappropriate because 'the determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ.'" Amfac, Inc., 74 Haw. at 108, 839 P.2d at 107. Because neither party has provided the Court with any facts upon which to determine the intent of the parties, summary judgment is inappropriate at this time.

Moreover, given that Covanta drafted the Contract, the Court must construe the ambiguity against Covanta. Koga Eng'g & Constr., Inc., 122 Hawai'i at 72, n.19, 222 P.3d at 991 n.19 ("Ambiguities in a contract are construed against the drafter."); Luke v. Gentry Realty, Ltd., 105 Hawai'i 241, 249, 96 P.3d 261, 269

(2004) ("This court has affirmed the general rule that, in interpreting contracts, ambiguous terms are construed against the party who drafted the contract.").

Accordingly, the Court determines that there is an ambiguity in the Contract, insofar as Articles 2.9.2 and 11.5 cannot reasonably be read together. Furthermore, because there is a genuine issue of material fact regarding the parties' intent concerning Parsons's ability to bring suit and recover damages against Covanta for a subcontractor's claim, the Court holds that Covanta has failed to carry its burden on summary judgment with respect to the duty to defend.

B.    Parsons's Duty to Indemnify

Finally, Covanta requests that the Court hold that, under the Contract, Parsons owes it a duty to indemnify it against AE's claims being asserted by Parsons. Covanta summarizes its arguments from its Motion re Disallowed Claims and argues that, "[i]f the Court rules in favor of Covanta on its Motion Re: Disallowed Claims, it would therefore also be appropriate for the Court to enforce the indemnity provisions in the General Contract with respect to the Disallowed Claims and rule that any liability as to the Disallowed Claims is Parsons'." (Mot. re Duty at 19-20.)

However, as discussed above, the Court has held that there are genuine disputes of material fact precluding summary judgment on the Disallowed

Claims.  It has not been determined that Parsons owes Covanta a duty to defend, because the indemnification provision in the Contract is ambiguous, and the Court also cannot say that Parsons owes Covanta a duty to indemnify.  Accordingly, because it has denied in part the Motion re Disallowed Claims and denied the Motion re Duty insofar as Covanta seeks a declaratory ruling regarding Parsons's duty to defend, the Court also denies the Motion re Duty regarding Parsons's duty to indemnify.  Therefore, the Motion re Duty is DENIED in its entirety.

//

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and

DENIES IN PART the Motion for Partial Summary Judgment re Disallowed

Claims.  Furthermore, the Court DENIES the Motion for Partial Summary

Judgment re Parsons, RCI, Inc.'s Duty to Defend, and, with Respect to the

Disallowed Claims, to Indemnify.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, <u>February 27, 2015</u>.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

<u>American Electric Co., LLC v. Parsons RCI, Inc.</u>, CIV. NO. 13-00471 BMK, CIV. NO. 14-00020 (Consolidated), ORDER (1) GRANTING IN PART AND DENYING IN PART COVANTA HONOLULU RESOURCE RECOVERY VENTURE'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE DISALLOWED CLAIMS (Doc. No. 113) AND (2) DENYING COVANTA HONOLULU RESORCE RECOVERY VENTURE'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE PARSONS, RCI, INC.'S DUTY TO DEFEND AND, WITH RESPECT TO THE DISALLOWED CLAIMS, TO INDEMNIFY (Doc. No. 122)