IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| AMERICAN ELECTRIC CO., LLC, | ) | CIV. NO. 13-00471 BMK |
| | ) | CIV. NO. 14-00020 BMK |
| Plaintiff, | ) | |
| | ) | (CONSOLIDATED CASES) |
| vs. | ) | |
| | ) | ORDER DENYING (1) PARSONS |
| PARSONS RCI, INC., | ) | RCI, INC.'S MOTION FOR |
| | ) | PARTIAL SUMMARY JUDGMENT |
| Defendant. | ) | AGAINST PLAINTIFF AMERICAN |
| | ) | ELECTRIC CO., LLC RELATED |
| | ) | TO ITS CLAIM FOR BREACH OF |
| COVANTA HONOLULU | ) | CONTRACT AS ALLEGED IN ITS |
| RESOURCE RECOVERY | ) | AMENDED COMPLAINT AND |
| VENTURE, | ) | REQUEST FOR DECLARATORY |
| | ) | RULING ON ENTITLEMENT TO |
| Plaintiff, | ) | ATTORNEYS' FEES AND COSTS |
| | ) | (Doc. No. 192) AND (2) COVANTA |
| vs. | ) | HONOLULU RESOURCE |
| | ) | RECOVERY VENTURE'S |
| PARSONS RCI, INC., | ) | STATEMENT OF PARTIAL |
| | ) | JOINDER RE PARSONS RCI, |
| Defendant. | ) | INC.'S MOTION FOR PARTIAL |
| | ) | SUMMARY JUDGMENT |
| | ) | AGAINST PLAINTIFF AMERICAN |
| | ) | ELECTRIC CO., LLC (Doc. No. 232) |

ORDER DENYING (1) PARSONS RCI, INC.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AGAINST PLAINTIFF AMERICAN ELECTRIC
CO., LLC RELATED TO ITS CLAIM FOR BREACH OF CONTRACT AS
ALLEGED IN ITS AMENDED COMPLAINT AND REQUEST FOR
DECLARATORY RULING ON ENTITLEMENT TO ATTORNEYS' FEES
AND COSTS (Doc. No. 192) AND (2) COVANTA HONOLULU RESOURCE
RECOVERY VENTURE'S STATEMENT OF PARTIAL JOINDER RE
PARSONS RCI, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST PLAINTIFF AMERICAN ELECTRIC CO., LLC (Doc. No. 232)

Before the Court is Defendant Parsons RCI, Inc.'s ("Parsons") Motion
for Partial Summary Judgment Against Plaintiff American Electric Co., LLC
Related to its Claim for Breach of Contract as Alleged in its Amended Complaint
and Request for Declaratory Ruling on Entitlement to Attorneys' Fees and Costs
(the "Motion").  (Doc. no. 192.)  Parsons seeks partial summary judgment against
Plaintiff American Electric Co., LLC ("AE") on the basis of Article 4.3 of the
Subcontract, which purportedly requires AE to pursue its claims against Defendant
Covanta Honolulu Resource Recovery Venture ("Covanta") in Parsons's name.

To the extent the Motion implicates Covanta's claims against Parsons
and its passing through of claims "on behalf of" AE, Covanta joins in the Motion
by way of its Statement of Partial Joinder re Parsons RCI, Inc.'s Motion for Partial
Summary Judgment Against Plaintiff American Electric Co., LLC (the "Partial
Joinder"), filed March 10, 2015.  (Doc. no. 232.)

The Motion and Partial Joinder came on for hearing before the Court

on March 31, 2015.[1]  After careful consideration of the Motion and Partial Joinder, the supporting and opposing memoranda, and the arguments of counsel, the Court hereby DENIES both the Motion and Partial Joinder.

BACKGROUND

The complex facts of this case are well known to the Court and the parties.  Accordingly, the Court only addresses the facts pertinent to the present Motion.

I.     THE PROJECT

Covanta is the developer and operator of the Alternative Energy Facility/Third Boiler Addition at the H-Power Facility (the "Project") in Kapolei, Hawaii.  (Covanta Am. Compl. ¶ 3.)  Covanta entered into a General Contract ("Contract") with Parsons to provide labor, equipment, materials, construction, supervision, and construction management for the Project.  (Parsons's Concise

_____

[1] Concurrent with the hearing on the present Motion and Partial Joinder, the Court also heard arguments on Covanta Honolulu Resource Recovery Venture's Motion for Partial Summary Judgment re Change Order 28 (doc. no. 190) and Parsons RCI, Inc.'s Limited Joinder to Covanta Honolulu Resource Recovery Venture's Motion for Partial Summary Judgment re Change Order 28, Filed January 30, 2015 (doc. no. 202).  The Court disposes of that motion and joinder by a separate order.

Statement of Facts[2] ("CSF") ¶ 1.)  Parsons, in turn, entered into a Subcontract

("Subcontract") with AE to provide the electrical work required for the Project.

(Id. ¶ 2.)

II.    ARTICLE 4.3 OF THE SUBCONTRACT

Regarding the Subcontract between AE and Parsons, the parties

appeared to agree that Parsons and AE would cooperate to pursue AE's claims

against Covanta.  Specifically, the Subcontract appears to contemplate AE filing

suit against Covanta in Parsons's name.  Paragraph 3 of Article 4.3 provides:

> In the event of any dispute or claim between
> CONTRACTOR and OWNER which directly or
> indirectly involves the work performed or to be
> performed by SUBCONTRACTOR, or in the event of
> any dispute or claim between CONTRACTOR and
> SUBCONTRACTOR caused by or arising out of conduct
> for which OWNER may be responsible,

---

[2] The Court notes with disapproval that both Parsons and AE failed to adhere to Local Rules 7.7 and 10.2(d) when submitting the courtesy copies of their exhibits and declarations to the Court.  Local Rule 10.2(d) provides that "[o]riginal documents and courtesy copies of exhibits, declarations, and/or affidavits shall have appropriately labeled tabs.  All exhibits attached to papers shall show the exhibit number or letter at the bottom of the first page of the exhibit."  Moreover, Local Rule 7.7 states that "[c]ourtesy copies must comply with all Local Rule requirements, including the tabbing of exhibits and declarations or affidavits." Neither Parsons nor AE tabbed the submissions of their respective courtesy copies of exhibits or declarations, and AE failed to even identify or mark its exhibits.  As a result, it was at times difficult for the Court to refer to the parties' exhibits and declarations.  The parties are cautioned to comply with all local rules, as repeated violations may result in the Court striking non-compliant filings.

SUBCONTRACTOR agrees to be bound to
CONTRACTOR and CONTRACTOR agrees to be
bound to SUBCONTRACTOR to the same extent that
CONTRACTOR is bound to OWNER by the terms of the
MAIN CONTRACT and by any and all procedures and
resulting decisions, findings, determinations, or awards
made thereunder by the person so authorized in the
MAIN CONTRACT, or by an administrative agency,
board, court of competent jurisdiction or arbitration. *If
any dispute or claim of SUBCONTRACTOR is
prosecuted or defended by CONTRACTOR together
with disputes or claims of CONTRACTOR'S own, and
the SUBCONTRACTOR is not directly a party,
SUBCONTRACTOR agrees to cooperate fully* with
CONTRACTOR and to furnish all documents,
statements, witnesses, and other information required by
CONTRACTOR for such purpose and shall pay or
reimburse CONTRACTOR for all expenses and costs,
including reasonable attorneys' fees incurred in
connection therewith, to the extent of
SUBCONTRACTOR'S interest in such claim or dispute.
SUBCONTRACTOR agrees to be bound by the
procedure and final determination as specified in the
MAIN CONTRACT and it will not take, or will suspend,
any other action or actions with respect to any such
claims and will pursue no independent litigation with
respect thereto, pending final determination of any such
dispute resolution procedure between OWNER and
CONTRACTOR. *It is expressly understood and agreed
that as to any and all claims asserted by
SUBCONTRACTOR in connection with this Project
arising from the actions or fault of OWNER,
CONTRACTOR shall not be liable unless
CONTRACTOR'S conduct is grossly negligent,
fraudulent, or in bad faith to SUBCONTRACTOR for
any greater amount than OWNER is liable to
CONTRACTOR*, less any markups or costs incurred by

CONTRACTOR. ***As to any claims asserted by SUBCONTRACTOR for or on account of acts or omissions of OWNER or its agents or design professionals, at the sole option of CONTRACTOR, SUBCONTRACTOR agrees to prosecute such claims in CONTRACTOR'S name.*** For any amount recovered or collected (whether through proceedings or settlement) by SUBCONTRACTOR, CONTRACTOR shall be entitled to ten percent (10%) of such amount received or collected as its mark-up for such claims provided, however, that CONTRACTOR cooperates with, and does not hinder or interfere with SUBCONTRACTOR'S pass through claim. ***SUBCONTRACTOR shall have full responsibility for preparation and presentation of such claims and shall bear expenses thereof including attorneys' fees.***

(Subcontract art. 4.3 ¶ 3 (emphases added) (doc. no. 57-3).) Moreover, the

Subcontract further provides that,

> [i]f any dispute between CONTRACTOR and SUBCONTRACTOR arises under this SUBCONTRACT, the prevailing party in any litigation or arbitration shall be entitled to its reasonable attorneys' fees, arbitration costs and expert fees.

(Id. art. 4.8.)

III.     PARSONS'S AND AE'S COMMUNICATIONS
         REGARDING PROSECUTION OF AE'S CLAIMS

AE initiated suit against Parsons on September 16, 2013, asserting

claims for breach of contract and unjust enrichment. (Doc. no. 1.) AE

subsequently amended its Complaint on September 24, 2013. (Doc. no. 5.)

On November 14, 2013, Parsons requested that AE pursue its claims against Covanta as pass-through claims in Parsons's name.[3]  Parsons requested that AE dismiss the pending lawsuit against it and bring suit against Covanta in Parsons's name.  (Mot. at 13 (citing Parsons's CSF ¶ 13; Parsons's CSF, Exh. A).)  Parsons's counsel informed AE that "[e]ntering into a Pass-Through Agreement benefits both of our clients.  AE can prosecute its claims with the assistance of Parsons and both parties' interests are aligned."  (Parsons's CSF, Exh. A.)

AE responded on January 6, 2014, declining to pursue its claims in Parsons's name.  AE argued that Article 4.3 only applied to clearly defined claims that solely arose from Covanta's actions and was therefore not applicable to its claims against Parsons.  (Mot. at 13 (citing Parsons's CSF ¶ 14; Parsons's CSF, Exh. B).)  AE contended that Article 4.3

> deal[s] with a simpler state of affairs when there is a
> clearly defined claim that arises solely from owner
> action, direction or omission.  Our present case is
> unfortunately not so clearly defined.  While American
> Electric believes that responsibility for the majority of its

---

[3] Although the parties do not provide the Court with earlier communication between the parties, the Court notes that there is a reference to prior communications regarding a draft "Pass-Through Agreement."  (See Parsons's CSF, Exh. A (noting that, "[o]n October 30, 2013, I sent you a draft Pass-Through Agreement.  Thereafter, we briefly spoke about the proposed agreement and you raised concerns that the agreement did not accurately reflect your understanding between the parties").)

> claims in this action properly rest with Covanta and its
> designers, it is not privy to the dealings between
> Parson/RCI and Covanta during the project. In our
> recent mediation, Covanta argued strongly that
> Parsons/RCI and not it were responsible for many of
> AE's claims. There also remain significant questions as
> to whether claims submitted by AE were properly passed
> through or timely presented to Covanta. In some cases,
> there well could be shared responsibility between
> Covanta and Parsons/RCI.

(Parsons's CSF, Exh. B.) AE suggested that Parsons and AE continue to meet to identify the claims attributable to Parsons and Covanta, respectively, and enter into a joint prosecution agreement, whereby "AE will bear principal responsibility for substantiating and proving the claim, and that Parsons/RCI will bear principal responsibility for defending any claims by Covanta that Parsons/RCI is responsible [for,] rather than itself." (Id.)

By letter dated April 4, 2014, Parsons informed AE that it elected for AE to pursue pass-through claims in Parsons's name. (Mot. at 14 (citing Parsons's CSF ¶ 15; Parsons's CSF, Exh. C).) Parsons stated that AE "acknowledge[s] the pass-through nature of its claims by alleging that its damages are the result of Covanta's actions. Accordingly, the Subcontract provides a clear process by which American Electric is to preserve and present it[s] claims and a process by which American Electric is to pursue such claims, in the name of Parsons, directly against

Covanta." (Parsons's CSF, Exh. C.) In essence, Parsons argued that most of AE's claims were directed against Covanta, rather than Parsons, and that Parsons had passed on most of AE's claims to Covanta for consideration. (Id.) With regard to the joint prosecution agreement, Parsons seemed open to cooperating with AE, but also insisted that AE "should bear principal responsibility for preparing, substantiating, presenting, pursuing and proving its pass-through claim to Parsons and to Covanta." (Id.)

AE claims that negotiations between Parsons and AE continued into July 2014, including discussions regarding a joint prosecution and pass-through agreement. (AE's CSF ¶¶ 4-5.) For example, on June 30, 2014, Parsons's counsel e-mailed AE's counsel a draft of the Joint Prosecution and Pass-Through Agreement, stating that "we are awfully close to working together on this deal." (AE's CSF, Exh. 1.) The agreement provided, *inter alia*, that

> Parsons and AE agree to jointly prosecute the AE Pass-Through Claims against Covanta in Parsons' name. AE, through its legal counsel[,] agrees to bear principal responsibility in the preparation and presentation of the AE Pass-Through Claims, including but not limited to claim preparation, expert reports, discovery, witness preparation, trial strategy, negotiations, mediation, settlement and/or appeal. AE will be solely responsible to pay all expenses relative to this work, including but not limited to all of its attorneys' fees and costs and experts' fees and costs. To the extent AE requests that

Parsons assists in the preparation and/or presentation of the AE Pass-Through Claims, AE agrees to pay Parsons its reasonable attorneys' fees, costs and experts' fees incurred only if approved in advance by AE. Parsons shall be responsible for its own defense and the costs, expenses and fees in defending the Covanta Claims against it, and any claims or arguments by Covanta that Parsons is responsible for any portion of the AE Claims.

(AE's CSF, Exh. 3, Joint Prosecution and Pass-Through Agreement at p. 5.) It was also intended to memorialize:

i) Parsons' decision to exercise its option to have AE prosecute all of the AE Claims arising from the acts or omissions of Covanta in Parsons' name, ii) AE's agreement to assume full responsibility for the preparation and presentation of such claims and related expenses including attorneys' fees, iii) Parsons' responsibility for its own defense of the Covanta Claims and arguments that Parsons and not Covanta is responsible for any portion of the AE Claims, and iv) the reservation of rights as to any of the AE Claims for which Parsons either agrees or is determined to be responsible.

(Id. at p. 4.)

Another draft of the agreement was exchanged on July 2, 2014. (AE's CSF, Exh. 3.) The parties continued to revise the agreement, and, on July 3, 2014, Parsons's counsel reported that "this looks good and I will recommend [Parsons] accept it." (AE's CSF, Exh. 4.) Four days later, however, Parsons's counsel stated that, because some of AE's requested language "asks too much of Parsons," the

proposed revisions were "a deal breaker for Parsons." (AE's CSF, Exh. 5.)

## STANDARD

Summary judgment is appropriate only where the Court determines that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c) (2010). In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>see also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1228 (9th Cir. 2000). However, the non-moving party cannot rely upon conclusory allegations unsupported by factual data to create an issue of material fact. <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993).

In deciding a motion for summary judgment, the Court's function is not to try issues of fact, but rather to determine whether there are issues to be tried. <u>Anderson</u>, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

## DISCUSSION

### I. PARSONS'S MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A. Validity of Pass-Through Claims

First, Parsons argues that pass-through procedures are enforceable under Hawaii law. (Mot. at 16-17.) It also argues that AE's claims against it are subject to Article 4.3 of the Subcontract. (Id. at 17-20.) As a preliminary matter, the Court agrees with Parsons to the extent pass-through claims are likely recognized under Hawaii law and to the extent AE was required to following Article 4.3.

On February 27, 2015, the Court issued its Order (1) Granting in Part and Denying in Part Covanta Honolulu Resource Recovery Venture's Motion for Partial Summary Judgment re Disallowed Claims (Doc. No. 113) and (2) Denying Covanta Honolulu Resource Recovery Venture's Motion for Partial Summary Judgment re Parsons, RCI, Inc.'s Duty to Defend and, With Respect to the Disallowed Claims, to Indemnify (Doc. No. 122). (Doc. no. 213.) Therein, the Court determined that Hawaii law would likely allow Parsons to "pass through" claims against Covanta. Citing to case law from California and Texas, the Court noted that pass-through claims are well recognized in a number of jurisdictions and well developed in federal courts. (Id. at 35-37 (citing Howard Contracting, Inc. v.

G.A. MacDonald Constr. Co., Inc., 71 Cal. App. 4th 38, 60, 83 Cal. Rptr. 2d 590, 602 (1998); Interstate Contracting Corp. v. City of Dallas, 135 S.W.3d 605, 610-11 (Tex. 2004)).)  The Court concluded that "the reasoning of the above-cited cases is sound.  As such, the Court holds that pass-through claims are well established in federal law and would likely be adopted by Hawaii courts."  (Id. at 37.)

As such, as an initial matter, the Court agrees with Parsons's assertion that pass-through claims are likely enforceable under Hawaii law.  For the reasons discussed in its February 27, 2015 Order, the Court also agrees that AE's claims, to the extent they implicate Covanta's alleged wrongdoing, are subject to the pass-through procedures of the Subcontract.  (Id. at 40-44.)  Accordingly, the Court finds that Article 4.3 governs the present dispute.

B.    Breach of Article 4.3

The gravamen of the Motion concerns whether AE breached the terms of the Subcontract.  Parsons contends that AE failed to assert its claims against Covanta in Parsons's name, as required by Article 4.3.  Conversely, AE argues that it did not breach the Subcontract and, in fact, Parsons breached its duties under the Subcontract.  Given the current factual record before the Court, Parsons has not demonstrated, as a matter of law, that AE breached the Subcontract.  Accordingly, the Court denies Parsons's request for summary judgment.

13

Regarding the interpretation of a contract, the Hawaii Supreme Court has stated that, "[a]s a general rule, the construction and legal effect to be given a contract is a question of law." Koga Eng'g & Constr., Inc. v. State, 122 Hawai'i 60, 72, 222 P.3d 979, 991 (2010) (citations omitted). "[A]bsent an ambiguity, [the] contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." Id. (some alterations in Koga) (quoting Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Hawai'i 487, 495, 78 P.3d 23, 31 (2003)). When interpreting a contractual provision, the court's goal is to determine the intention of the parties. Pancakes of Haw., Inc. v. Pomare Props. Corp., 85 Hawai'i 300, 304-05, 944 P.2d 97, 101-02 (Ct. App. 1997). "When the terms of a contract are definite and unambiguous there is no room for interpretation." Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984) (quoting H. Hackfield & Co. v. Grossman, 13 Haw. 725, 729 (1902)). If the parties use language that "leaves some doubt as to the meaning and intention[,]" however, then the court will "apply the rules of construction and interpretation in an effort to ascertain the intention of the parties to the contract." Id.

As a general matter, Parsons argues that AE has breached the Subcontract by maintaining the current action against Parsons, rather than asserting its claims against Covanta in Parsons's name. It argues that, under Article 4.3,

"AE agreed to prosecute claims in Parsons' name that were 'asserted by Subcontractor *for or on account of* acts or omissions of Owner or its agents or design professionals.' However, AE has refused to bring the underlying claims in this action in Parsons' name despite Parsons' repeated requests that it do so." (Mot. at 18 (emphasis in original).) According to Parsons, the point of contention is the phrase "for or on account of." It claims that AE "takes the position that the language at issue refers only to 'clearly defined claims' that 'solely arise' from the acts or omissions of the Owner." (Id.) It argues that AE is trying to avoid Article 4.3 "by merely including bare and generalized allegations against Parsons," which would ostensibly relieve AE of its obligations to assert claims against Covanta in Parsons's name.[4] (Id. at 19.) Parsons contends that AE's interpretation "reads in requirements of clarity and exclusivity that [are] not contained in the phrase's plain and ordinary meaning[,]" which would render Article 4.3 meaningless. (Id.)

In response, AE takes the position that summary judgment is not warranted, because (1) Article 4.3 does not contemplate the current, complex scenario; (2) Parsons breached duties owed to AE; (3) the Motion does not account

---

[4] Parsons also contends that, aside from AE's only direct allegation against Parsons for the alleged mismarking of conduit locations and certain other Field Change Requests ("FCR"), "all of the alleged acts or omissions that caused AE's damages were committed by Covanta and Burns and Roe." (Id. at 19.)

for other claims not encompassed by Article 4.3; and (4) AE did not breach the

Subcontract.

First, AE argues that Article 4.3 was not meant to deal with the

complex set of claims in this action.  (Mem. in Opp'n at 5.)  It contends that, while

AE's claims originated from Covanta's conduct,

> it is Parsons which directed AE to proceed with all of the
> changes and increased quantities of work in this case.  It
> is Parsons that failed to properly demand resolution of
> the additional compensation due to AE for such work,
> and which left change proposals unresolved with Covanta
> while ordering AE to complete the project.  It is Parsons
> that thus depleted all of AE's financial resources, causing
> it to finance the construction of the project without
> payments to the tune of millions of dollars.  It is Parsons
> that failed to stop the work until satisfactory design
> documents had been received, and until the equitable
> adjustments in the subcontract amount for the changes
> were incorporated in agreed Change Orders upon which
> payments for the work could be made.

(Id. at 5-6 (citing AE's CSF ¶ 12).)  AE claims that Parsons's own representative

testified that the work should have been stopped, but "Parsons nevertheless forced

AE to continue while failing to compensate AE for the extra work."  (Id. at 6

(citing AE's CSF ¶ 12).)  AE also contends that Parsons failed to pass through

certain claims to Covanta, improperly rejected some of AE's claims, and

"otherwise undermined the pass-through nature of those claims."  (Id. (citing AE's

CSF ¶¶ 9-11).)  As a result, AE argues that Parsons's wrongful actions "prevent

simplistic application of the Subcontract provision related to pursuing pass-through

claims against the Owner in Parsons' name.  Parsons' conduct, and breach of

duties to AE, created the necessity of its involvement to defend its actions and

answer to the liabilities it assumed."  (Id. at 6-7.)

Second, AE argues that Parsons breached the duties it owed AE under

Article 4.3 of the Subcontract.  It contends that, under the so-called "prevention

doctrine," a condition precedent is waived or excused if the promisor's conduct

prevents or hinders fulfillment of the condition.  (Id. at 7 (citing Moore Bros. Co.

v. Brown & Root, Inc., 207 F.3d 717 (4th Cir. 2000); Ikeoka v. Kong, 47 Haw.

220, 228, 386 P.2d 855, 860 (1963)).)  Similarly, "where a prime contractor is

required under the subcontract to present pass-through claims to the owner, it

serves as a basis of liability for the prime contractor if it fails to make that

presentation."  (Id. (citing J.L. Simmons Co. v. United States, 304 F.2d 886 (Ct.

Cl. 1962)).)  AE further claims that Parsons breached its duties by breaching the

implied duty of good faith and fair dealing found in all contracts.  (Id. at 8-10

(citing Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawai'i 120, 124, 920 P.2d 334,

338 (1996); Restatement (Second) of Contracts § 205).)  AE contends that

"Parsons has breached all of the foregoing duties to AE[,]" and that "Parsons and

AE's duties must be construed in their totality, and in light of Parsons' conduct which serves to undermine the intended effect and protection of AE under this clause." (Id. at 10-11.)

Third, AE argues that Parsons is not entitled to summary judgment because Covanta filed suit against Parsons; Parsons is pursuing its independent claims against Covanta; Parsons expressly rejected and prevented AE's pass-through claims against Covanta; and Parsons unjustifiably reduced the amount of AE's claims. (Id. at 11 (citing AE's CSF ¶¶ 9-11).)

Fourth, AE argues that it did not breach Article 4.3. It claims that, even though it provided Parsons with notice of its claims, Parsons did not initiate action against Covanta "to serve as a basis of stay on AE's pursuit of claims under this Subcontract Provision." (Id. at 13.) AE argues that Parsons failed to pursue its Change Order Requests ("COR") and, at that time, Parsons did not authorize AE to proceed against Covanta in Parsons's name. (Id. (citing AE's CSF ¶ 1).) AE contends that it cooperated with Parsons to determine which claims were asserted against Covanta and which were Parsons's responsibility and sought to resolve those claims accordingly. (Id.)

AE argues that only after the commencement of this action did Parsons first attempt to invoke Article 4.3. (Id. at 13-14.) AE claims that it

"responded reasonably within the spirit of section 4.3 as to how AE could pursue the claims against Covanta, and how to deal with Parsons' independent or residual liabilities." (Id. at 14 (citing Parsons's CSF, Exh. B).) AE states that these negotiations continued well after Parsons initiated its Third-Party Complaint against Covanta. (Id.) During this time, the two parties exchanged multiple drafts of an agreement regarding AE's and Parsons's obligations. (Id. (citing AE's CSF ¶¶ 2-7).) Under the agreement, "AE was to assume the responsibility for establishing its claims, and Parsons was responsible for defending Covanta's claims against it. As negotiations continued, Parsons agreed to its responsibility to defend its own conduct and any arguments by Covanta that Parsons and not Covanta is responsible for any portion of AE's claims." (Id. (citing AE's CSF ¶ 5; AE's CSF, Exhs. 3-4).) AE states that Parsons terminated discussions on July 7, 2014, due to Parsons's concern that the agreement could lead to inconsistent results of the same issue in multiple proceedings. (Id. at 14-15 (citing AE's CSF ¶¶ 6-7; AE's CSF, Exh. 4-5).)

Based on the foregoing arguments, the Court declines to hold, as a matter of law, that AE breached Article 4.3 of the Subcontract such that Parsons is entitled to summary judgment. The Court holds that there are too many disputes of material fact that preclude summary judgment at this time.

First, AE argues that it did not breach the Subcontract, or, at the very least, there is a genuine dispute of material fact regarding whether AE's and Parsons's conduct evidence that AE breached the Subcontract. The relevant section of the Subcontract provides:

> It is expressly understood and agreed that as to any and all claims asserted by SUBCONTRACTOR in connection with this Project arising from the actions or fault of OWNER, CONTRACTOR shall not be liable unless CONTRACTOR'S conduct is grossly negligent, fraudulent, or in bad faith to SUBCONTRACTOR for any greater amount than OWNER is liable to CONTRACTOR, less any markups or costs incurred by CONTRACTOR. As to any claims asserted by SUBCONTRACTOR for or on account of acts or omissions of OWNER or its agents or design professionals, at the sole option of CONTRACTOR, SUBCONTRACTOR agrees to prosecute such claims in CONTRACTOR'S name.

(Subcontract art. 4.3 ¶ 3.)

The Court must interpret the Subcontract in accordance with its plain and ordinary meaning. See Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i 226, 240, 921 P.2d 146 (1996). Under the Subcontract, AE is required to prosecute its claims that are "for or on account of acts or omissions of OWNER" in Parsons's name against Covanta, if Parsons so elects. Although the Court is cognizant of the fact that both AE and Parsons attempted to negotiate their responsibilities with

respect to this provision in good faith, such an attempt is not enough to satisfy the terms of the Subcontract.  The Court agrees with Parsons that the negotiation of the Joint Prosecution and Pass-Through Agreement, in and of itself, does not relieve AE of its obligations under the Subcontract.  (See Reply at 10.)  At the conclusion of the negotiations, the parties did not have any agreement in place that would supersede the Subcontract or otherwise alter AE's obligations under the Subcontract.  As such, the parties' negotiations regarding the Joint Prosecution and Pass-Through Agreement do not preclude a determination that AE breached Article 4.3 of the Subcontract.

However, despite AE's ostensible failure to follow the terms of Article 4.3, the Court declines to grant Parsons summary judgment at this time.  It is unclear whether and to what extent AE's claims are directed at Parsons, rather than Covanta.  AE's First Amended Complaint does appear to allege that the basis of its claims is Covanta's alleged wrongdoing.  However, AE argues that, although it was Covanta's decisions and directions that caused its damages, it was also Parsons that implemented and enforced Covanta's instructions.  (Mem. in Opp'n at 5-6.)  Moreover, Parsons's actions and decisions whether or not to pass through

AE's CORs to Covanta may also serve as the basis of Parsons's liability to AE.[5]

Neither party has attempted to parse out the extent AE's claims are aimed at

Parsons, rather than Covanta. The factual issues at hand are too complex and

convoluted to decide on a motion for summary judgment and present too many

questions of fact. As such, the Court cannot say, as a matter of law, that AE's

lawsuit in this case necessarily requires it to pursue all of its claims against

Covanta in Parsons's name.

Additionally, there are questions of fact regarding whether Parsons

breached the Subcontract. AE argues that Parsons violated the Subcontract by

breaching the "prevention doctrine" and the duty of good faith and fair dealing,

and thus Parsons cannot enforce Article 4.3 against AE.[6]

Under the doctrine of prevention, "[i]t is a general principle of

contract law that if one party to a contract hinders, prevents or makes impossible

---

[5] The Court notes that Parsons has stated that the Motion is not directed at "Category 5" claims, which are comprised of 22 FCRs or CORs that Parsons did not submit to Covanta, but is rather focused on Category 3 and 4 claims, which were submitted to Covanta. (Mot. at 9.) Regardless, it is still unclear whether and to what extent Parsons may have liability on those latter claims.

[6] The Court acknowledges Parsons's argument that AE appears to merely identify these principles without identifying Parsons's allegedly wrongful conduct that constitutes a breach. (Reply at 12-14.) However, the Court construes AE's arguments as incorporating its preceding arguments contained in its memorandum in opposition regarding Parsons's allegedly wrongful conduct.

performance by the other party, the latter's failure to perform will be excused." 13 Williston on Contracts § 39:3 (4th ed., updated 2014); Restatement (Second) of Contracts § 245 cmt. a (1981) ("Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him under § 205 may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence."). Even construing AE's arguments liberally, the Court is unable to discern how Parsons's allegedly wrongful actions may have hindered AE's performance *with regard to the prosecution of its claims against Covanta in Parsons's name*. Cf. 13 Williston on Contracts § 39:3 ("Under the doctrine, a contracting party whose performance of its promise is prevented by the other party is not obligated to perform and is excused from any further offer of performance."). As such, based on the current facts before the Court, the doctrine of prevention does not bar Parsons's claims against AE.

Regarding the duty of good faith and fair dealing, under Hawaiʻi law, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawaiʻi 120, 123-24, 920

23

P.2d 334, 337-38 (1996) (citations omitted). To the extent there is a factual dispute

concerning whether Parsons breached the Subcontract with AE by failing to

properly pass through AE's claims to Covanta or otherwise hindering AE's

prosecution of its claims, the Court cannot grant summary judgment at this time.

As the Court previously noted in its February 27, 2015 Order (1) Granting in Part

and Denying in Part Covanta Honolulu Resource Recovery Venture's Motion for

Partial Summary Judgment re Disallowed Claims (Doc. No. 113) and (2) Denying

Covanta Honolulu Resource Recovery Venture's Motion for Partial Summary

Judgment re Parsons, RCI, Inc.'s Duty to Defend and, With Respect to the

Disallowed Claims, to Indemnify (Doc. No. 122), "the factual record is not clear

regarding Parsons's actions 'on behalf of' AE. Even assuming, *arguendo*, that

Covanta is correct and Parsons cannot bring claims on behalf of an uncooperative

party, the Court cannot determine whether Parsons failed to act on behalf of AE in

asserting the Disallowed Claims." (Doc. no. 213 at 41.) In other words, the Court

was not able to determine whether Parsons acted wrongfully such that it breached

the Contract. Similarly, the Court is still not able to determine at this time whether

Parsons's actions may have breached the Subcontract with AE by breaching the

implied covenant of good faith and fair dealing, and, in viewing the evidence in the

light most favorable to AE, the Court acknowledges that there is a factual dispute

concerning whether Parsons acted wrongfully. Thus, because Parsons may have violated the implied covenant of good faith and fair dealing, the Court cannot say, as a matter of law, that AE wrongfully breached the Subcontract.

For the foregoing reasons, the Court holds that there are genuine issues of material fact precluding summary judgment as to AE's breach of Article 4.3. As such, the Motion is DENIED.

C.     Parsons's Request for Attorneys' Fees

Given the above rulings, the Court denies Parsons's request for attorneys' fees at this time. Article 4.3 of the Subcontract provides, in relevant part, that AE

> shall pay or reimburse CONTRACTOR for all expenses
> and costs, including reasonable attorneys' fees incurred
> in connection therewith, to the extent of
> SUBCONTRACTOR'S interest in such claim or dispute.
> . . . SUBCONTRACTOR shall have full responsibility
> for preparation and presentation of such claims and shall
> bear expenses thereof including attorneys' fees.

(Subcontract art. 4.3.) Moreover, the Subcontract also provides that,

> [i]f any dispute between CONTRACTOR and
> SUBCONTRACTOR arises under this
> SUBCONTRACT, the prevailing party in any litigation
> or arbitration shall be entitled to its reasonable attorneys'
> fees, arbitration costs and expert fees.

(Id. art. 4.8.)

However, in light of the Court's ruling that there are genuine disputes of material fact concerning whether AE and Parsons complied with the Subcontract with regard to the pass-through claims, the Court cannot declare Parsons the prevailing party with regard to an award of attorneys' fees at this time. Nor can the Court determine that AE is required to shoulder Parsons's litigation expenses in this action. Accordingly, Parsons's request for attorneys' fees is DENIED.

II.  COVANTA'S JOINDER TO PARSONS'S MOTION

In conjunction with the Motion, Covanta also seeks partial summary judgment against Parsons "to the extent the Motion seeks to establish that AE has never asserted 'pass-through' claims against Covanta in Parsons's name under Article 4.3 of the Subcontract." (Partial Joinder at 2.) Covanta requests that the Court hold that, "to the extent Parsons sought to assert AE's claims as pass-through claims or otherwise on AE's behalf, it could only have done so under Article 7 [of the Contract], which it failed to do here." (Id. at 15.) For the reasons discussed below, the Court DENIES the Partial Joinder in its entirety.

First, Covanta improperly seeks to relitigate the issues it raised in its previous Motion for Partial Summary Judgment re Disallowed Claims (doc. no. 113), which the Court granted in part and denied in part on February 27, 2015 (doc. no. 213). Among other things, Covanta argued that Parsons's claims must be

dismissed, because they were not properly presented as "pass-through" claims "on behalf of" AE pursuant to Article 7 of the Contract. Covanta argued that "Parsons' pleadings do not assert that Parsons' claims are being brought on American Electric's behalf. Nor could they, since Parsons is being sued by American Electric on those very same claims and has clearly and unequivocally admitted that it has denied the very same claims as untimely and unsubstantiated." (Reply to Mot. for Partial Summ. J. re Disallowed Claims at 4.) Here, Covanta again argues that Parsons failed to comply with Article 7 of the Contract and did not properly assert the so-called "Disallowed Claims" that were the subject of Covanta's previous motion. (Partial Joinder at 4-6.) Covanta repeats its argument that Parsons could only bring a pass-through claim under Article 7 of the Contract, rather than Article 11. (Id. at 8-13.) For the second time, Covanta contends that Parsons did not follow the procedure set forth in Article 7, thus barring the Disallowed Claims. (Id. at 13-15.)

It is improper for Covanta to attempt to relitigate these previously-decided issues in the guise of a joinder. In essence, Covanta is seeking the Court's reconsideration of its previously-denied motion by raising the same arguments that the Court has already considered and rejected. The only new argument offered by Covanta concerns the Court's ruling on its previous motion, wherein the Court

stated that "the factual record is unclear whether or not Parsons failed to assert the

Disallowed Claims 'on behalf of' AE." (Id. at 2-3 (citing doc. no. 213 at 43).)  It

argues that, based on Parsons's arguments that AE did not comply with the

Subcontract, Parsons could not have presented the claims "on behalf of" AE.  (Id.

at 7.)  However, Parsons's Motion and Covanta's Partial Joinder do not provide the

Court with any new material fact that would change the Court's previously ruling

at this time.  Although the Court indicated in its February 27, 2015 ruling on

Covanta's motion that it reserved the right to take up the issue of the pass-through

claims at a later date, the Partial Joinder is an improper vehicle that does not

present the Court with any new fact or argument on which the Court would reverse

or modify its previous ruling.  As such, because the Partial Joinder attempts to

improperly seek reconsideration of the Court's previous order, the Court must

DENY the Partial Joinder.[7]

        Finally, insofar as the underlying Motion is denied, the Partial Joinder

---

[7] Additionally, as noted by Parsons, the Partial Joinder is improper to the extent it seeks different relief than that requested in the underlying Motion.  The Partial Joinder does more than just join in Parsons's Motion to seek the same relief for Covanta; it goes a step further to request that the Court hold that, if AE did not comply with Article 4.3 of the Subcontract, then by necessity Parsons also breached Article 7 of the Contract by failing to properly present AE's claims as "pass-through" claims "on behalf of" AE.  That previously-litigated issue is beyond the scope of the Motion and is not properly before the Court at this time.

must also be DENIED. As explained above, there are factual disputes regarding whether and to what extent AE may have wrongfully breached the Subcontract, and Parsons is not entitled to summary judgment as a matter of law. Similarly, Covanta is not entitled to summary judgment on the same issues.

CONCLUSION

For the foregoing reasons, the Court DENIES the Motion and Partial Joinder. The Court holds that there are genuine issues of material fact regarding whether Parsons and AE breached the terms of the Subcontract. Moreover, Covanta's Partial Joinder is procedurally improper and must be denied inasmuch as the underlying Motion is not fit for summary judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, <u>April 30, 2015</u>.



   <u>/S/ Barry M. Kurren</u>
Barry M. Kurren
United States Magistrate Judge

<u>American Electric Co., LLC v. Parsons RCI, Inc.</u>, CIV. NO. 13-00471 BMK, CIV. NO. 14-00020 BMK (Consolidated), ORDER DENYING (1) PARSONS RCI, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF AMERICAN ELECTRIC CO., LLC RELATED TO ITS CLAIM FOR BREACH OF CONTRACT AS ALLEGED IN ITS AMENDED COMPLAINT AND REQUEST FOR DECLARATORY RULING ON ENTITLEMENT TO ATTORNEYS' FEES AND COSTS (Doc. No. 192) AND (2) COVANTA HONOLULU RESOURCE RECOVERY VENTURE'S STATEMENT OF PARTIAL JOINDER RE PARSONS RCI, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF AMERICAN ELECTRIC CO., LLC (Doc. No. 232)