IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMERICAN ELECTRIC CO., LLC, | CIV. NO. 13-00471 BMK |
| | CIV. NO. 14-00020 BMK |
| Plaintiff, | |
| | (CONSOLIDATED CASES) |
| vs. | |
| | |
| PARSONS RCI, INC., | ORDER DENYING (1) COVANTA |
| | HONOLULU RESOURCE |
| Defendant. | RECOVERY VENTURE'S |
| | MOTION FOR PARTIAL |
| | SUMMARY JUDGMENT RE |
| | CHANGE ORDER 28 (Doc. no. 190) |
| COVANTA HONOLULU | AND (2) PARSONS RCI, INC.'S |
| RESOURCE RECOVERY | LIMITED JOINDER TO COVANTA |
| VENTURE, | HONOLULU RESOURCE |
| | RECOVERY VENTURE'S |
| Plaintiff, | MOTION FOR PARTIAL |
| | SUMMARY JUDGMENT RE |
| vs. | CHANGE ORDER 28, FILED |
| | JANUARY 30, 2015 (Doc. no. 202) |
| PARSONS RCI, INC., | |
| | |
| Defendant. | |
| | |

ORDER DENYING (1) COVANTA HONOLULU RESOURCE
RECOVERY VENTURE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE CHANGE ORDER 28 (Doc. no. 190) AND (2) PARSONS RCI, INC.'S
LIMITED JOINDER TO COVANTA HONOLULU RESOURCE
RECOVERY VENTURE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
RE CHANGE ORDER 28, FILED JANUARY 30, 2015 (Doc. no. 202)

Before the Court is Plaintiff/Third-Party Defendant Covanta Honolulu

Resource Recovery Venture's ("Covanta") Motion for Partial Summary Judgment

re Change Order 28 (the "Motion"). (Doc. no. 190.) Covanta seeks partial summary judgment against Defendant/Third-Party Plaintiff Parsons RCI, Inc. ("Parsons") to the extent Change Order 28 bars Parsons from asserting claims that arose prior to February 1, 2012. Covanta contends, *inter alia*, that Parsons is precluded from asserting claims encompassed by Change Order 28, because it waived its rights to seek additional relief for claims arising prior to the date of the change order.

Inasmuch as the Motion implicates Plaintiff/Third-Party Defendant American Electric Co., LLC's ("AE") claims against Parsons through the similar language contained in Change Order 14, Parsons joins in the Motion by way of its Limited Joinder to Covanta Resource Recovery Venture's Motion for Partial Summary Judgment re Change Order 28, Filed on January 30, 2015 (the "Limited Joinder"). (Doc. no. 202.)

The Motion and Limited Joinder came on for hearing before the Court on March 31, 2015.[1] After careful consideration of the Motion and Limited

---

[1] Concurrent with the hearing on the present Motion and Limited Joinder, the Court also heard arguments on Parsons's Motion for Partial Summary Judgment Against Plaintiff American Electric Co., LLC Related to its Claim for Breach of Contract as Alleged in its Amended Complaint and Request for Declaratory Ruling on Entitlement to Attorneys' Fees and Costs (doc. no. 192) and Covanta's Statement of Partial Joinder re Parsons RCI, Inc.'s Motion for Partial Summary

Joinder, the supporting and opposing memoranda, and the arguments of counsel, the Court hereby DENIES both the Motion and Limited Joinder.

BACKGROUND

The complex facts of this case are well known to the Court and the parties. Accordingly, the Court only addresses the facts pertinent to the present Motion.

I.    THE PROJECT

Covanta is the developer and operator of the Alternative Energy Facility/Third Boiler Addition at the H-Power Facility (the "Project") in Kapolei, Hawaii. (Covanta First Am. Compl. ¶ 3.) Covanta entered into a General Contract ("Contract") with Parsons to provide labor, equipment, materials, construction, supervision, and construction management for the Project. (Parsons's Concise Statement of Facts ("CSF") ¶ 1.) Parsons, in turn, entered into a Subcontract ("Subcontract") with AE to provide the electrical work required for the Project. (Id. ¶ 2.)

Based upon preliminary drawings that were substantially incomplete, AE agreed to perform the electrical work on the Project for $12,866,586. (AE First

Judgment Against Plaintiff American Electric Co., LLC (doc. no. 232). The Court disposes of that motion and joinder by a separate order.

3

Am. Compl. ¶ 9.)  According to AE, Covanta committed to provide a full and final project design by November 2010, before the majority of AE's work on the project was to take place.  (Id. ¶¶ 48-49.)  AE, however, was required to begin work well before the completion of project design work due to the "fast-track" nature of the third boiler project.  (Id. ¶ 49; Covanta First Am. Compl. ¶ 10.)

AE asserts that the "multitude of changes during construction," evidenced by numerous Change Order Requests ("COR") and Field Change Requests ("FCR"), "caused substantial escalation in the quantities and cost of the work beyond any reasonable estimate at the time of contract, and beyond the quantities provided by AE to document the basis of its bid."  (AE First Am. Compl. ¶ 14.)  AE contends that it was required by Parsons "to perform extra work which was outside of its original scope of work, accelerate its work, re-sequence its work, and perform rework due to uncoordinated and deficient drawings, with the promise and agreement that [AE] would be compensated for its extra work."  (Id. ¶ 198.)  In light of this additional work and associated expense, AE brought suit against Parsons seeking "$12,579,308 plus accruing interest, attorneys['] fees[ ] and costs," owed for additional work performed over and above the amount of AE's original bid.  (Id. ¶ 201.)

II.    CHANGE ORDERS 28 AND 14

Arguably in recognition of, *inter alia*, the change in work and the additional work performed by AE, on or around February 1, 2012, Parsons and Covanta entered into Change Order 28.  Change Order 28 amended and supplemented certain Contract terms relating to Mechanical Completion (Item 1), overtime expenses (Item 2), Mechanical Milestones (Item 3), and waiver of claims (Items 4 and 5).  (Covanta's CSF, Exh. A, Change Order 28 at 1-2.)  In particular, Item 4 provides:

> The compensation (time and cost) set forth in this Change Order comprises the total compensation due the Contractor, all Subcontractors, and all suppliers, for any schedule impact claims, known or which the Contractor should have know[n] about using reasonable diligence and as to which Contractor should have provided notice of claim under the Contract, through the date of this Change Order.  By signing this Change Order, the Contractor acknowledges and agrees, on behalf of itself, all Subcontractors, and all suppliers, that the stipulated compensation includes, but is not limited to, payment for the interruption of schedules, extended overhead costs, delay, and all impact, ripple effect or cumulative impact on all other work under this Contract.  This Change Order constitutes a full and final mutual accord and satisfaction for the scope of this Change Order, and the time and/or costs under this Change Order constitute the total contractual and equitable adjustment owed for its scope of work to the Contractor, all Subcontractors, and all suppliers.  In respect of this change, the Contractor, on behalf of itself, all Subcontractors, and all suppliers,

agrees to waive all rights, without exception or reservation of any kind whatsoever, to file any further claim or request for equitable adjustment of any type, for any schedule impact claims, known or which the Contractor should have known about using reasonable diligence and as to which Contractor should have provided notice of claim under the Contract through the date of this Change Order. Except as provided herein, this Change Order does not constitute a waiver of any notice requirements in the Contract.

(Change Order 28, Item 4.) Relatedly, Item 5 provides:

Except as specifically provided herein, the Contractor does not waive its rights to seek or claim additional compensation under the Contract for other Change Order Requests . . . for its direct costs, but does not reserve and hereby waives its right for additional time, extended overhead costs, or for any schedule impact claims, for those other Change Order Requests that are pending and unresolved . . . .

(Change Order 28, Item 5.)

Around the same time that Parsons and Covanta agreed to Change

Order 28, Parsons and AE entered into Change Order 14 with regard to the

Subcontract.[2] Item 3 to Change Order 14 provided:

The compensation (time and cost) set forth in this Change Order comprises the total compensation due Subcontractor, its lower tier subcontractors and all

---

[2] When referring to Change Order 28 to the Contract, the Court also applies its analysis and decision to Change Order 14 to the Subcontract, even if Change Order 14 is not explicitly referenced, and vice versa.

suppliers, for any schedule impact claims, known or which the Subcontractor should have known about using reasonable diligence and as to which Subcontractor should have provided notice of claim under the Contract, through February 1, 2012. By signing this Change Order, the Subcontractor acknowledges and agrees, on behalf of itself, all its lower tier Subcontractors and all suppliers, that the stipulated compensation includes, but is not limited to, payment for the interruption of schedules, extended overhead costs, delay, and all impact, ripple effect or cumulative impact on all other work under this Contract. This Change Order constitutes a full and final mutual accord and satisfaction for the scope of this Change Order, and that the time and/or costs under this Change Order constitutes the total contractual and equitable adjustment owed for its scope of work to the Subcontractor, its lower tier Subcontractors, and all suppliers. In respect of this change, the Subcontractor, on behalf of itself, all its lower tier Subcontractors, and all suppliers, agrees to waive all rights, without exception or reservation of any kind whatsoever, to file any further claim or request for equitable adjustment of any type, for any schedule impact claims, known or which the Subcontractor should have known about using reasonable diligence and as to which Subcontractor should have provided notice of claim under the Contract through February 1, 2012.

(Covanta's CSF, Exh. B, Change Order 14, Item 3.) Item 4 of Change Order 14

substantially mirrored Item 5 of Change Order 28. (Change Order 14, Item 4.)

III.    THE NATURE OF THE CHANGE IN AE'S WORK

        The parties disagree as to the characterization of the changed work

undertaken by AE. However, it appears undisputed that AE performed work

outside of the scope of the original Contract terms. For the purposes of this Motion, Covanta alleges that the following categories of claims are barred by Change Order 28.

A.   Late and Faulty Design Drawings Claims

Covanta cites to Parsons's Third-Party Complaint and Counterclaim against Covanta, which allege that Covanta and its engineer, Burns & Roe, issued untimely drawings, resulting in project delay and increased costs. (Mot. at 7 (citing Parsons Third-Party Compl. ¶¶ 9, 11); id. at 8 (citing Parsons Counterclaim ¶¶ 8, 12).) Covanta alleges that it and its engineers issued 540 design drawings to Parsons and AE throughout the duration of the Project. (Id. at 8 (citing Decl. of Bruno Cividini ("Cividini Decl.") ¶ 3).) However, Covanta argues that "the vast majority were issued before February 2012 and were not revised thereafter. Any schedule impact claim based on drawings issued prior to February 1, 2012 is barred." (Id. (citing Cividini Decl. ¶ 3).)

B.   Additional Supervision Claims (COR 287)

Covanta also points to COR 287, dated February 21, 2013, which sought "additional supervision and staffing" over and above AE's "original staffing plan." (Id. (citing Covanta's CSF ¶ 9); Covanta's CSF, Exh. E, COR 287).) Covanta also argues that AE's own expert asserted that AE planned that

"the majority of supervision hours were required between March 2011 and
February 2012." (Id. (citing Covanta's CSF ¶ 10; Covanta's CSF, Exh. H, Expert
Report of Joshua Ritti ("Ritti Report") at 89).) Covanta asserts that, by May 2011,
"AE had already documented dramatically lower productivity than anticipated."
(Id. (citing Covanta's CSF ¶ 11).)

Specifically with regard to AE's claims that the "design revisions"
and "poorly coordinated drawings" required additional supervision and increased
costs, Covanta contends that AE was aware of the "impact" effects as of November
2011, well before the February 1, 2012 benchmark. (Mot. at 9-10.) Covanta
claims that AE cited to three communications in support of its claims regarding the
drawings, which are dated November 30, 2011, January 30, 2012, and March 22,
2012. (Id. at 9 (citing Covanta's CSF ¶ 9).) Covanta argues that AE was thus
aware of the underlying issues raised in those communications as of November
2011. (Id.)

Also in connection with COR 287, AE contended that untimely cable
and conduit schedules contributed to the increased costs, where the first schedule
was not released until February 2011 and the first cable schedule was not released
until January 2011. (Id. at 10 (citing Covanta's CSF ¶¶ 14, 16).) AE further
alleged that, from February 2011, the conduit schedule increased by 268% and the

cable quantity schedule increased over 1,000%. (Id. (citing Covanta's CSF ¶ 15).) Covanta contends that AE's allegations show that, "under AE's own version of the facts, the vast majority of alleged delays resulting from cable and conduit schedule revisions occurred in 2011, well before Change Order 28 was adopted." (Id. at 11.)

Regarding AE's complaint of out-of-sequence mechanical work, Covanta argues that AE claimed that "too few instruments had been installed" before the Project, thus increasing costs for additional supervision. (Id. (citing Covanta's CSF ¶ 17).) AE stated that it had "continuously notified Parsons' (sic) of these impacts" and that the "issue was openly discussed onsite amongst Covanta, Parsons and AE through the fall of 2011." (Id. (citing Covanta's CSF ¶ 18).) Covanta also points to the discussion of the increased costs of the Fly Ash building in the Ritti Report, which "demonstrate[s] that each installation date in question preceded February 1, 2012, with roughly half of the installations taking place in October 2011." (Id. at 12 (citing Covanta's CSF ¶ 19).)

AE also claimed that Covanta's requirement that AE "adhere to more stringent quality control requirements than specified in the contract documents" resulted in increased costs. (Id. (citing Covanta's CSF ¶ 20).) Covanta argues that, because AE pointed to six revisions to its quality control plan that it submitted to

10

Parsons through August 5, 2011, "[a]ny delays or increased costs resulting from those revisions must therefore have predated February 1, 2012." (Id. at 13.)

C.     Delay/Extended Overhead Claims (COR 280)

Next, Covanta takes issue with COR 280, dated December 19, 2012, which asked for additional payment "based on an ongoing and continuing series of delays and impacts to AE that has been the subject of numerous discussions and correspondence over the course of the project." (Id. at 13 (citing Covanta's CSF ¶ 21; Covanta's CSF, Exh. I).) AE divided the delay claims into two periods: Delay Period 1 and Delay Period 2, the latter of which spans July 19, 2012 to January 18, 2013. (Id. (citing Covanta's CSF ¶ 22).) Work during Delay Period 2 was allegedly delayed by 123 days. (Id. (citing Covanta's CSF ¶ 22).)

Approximately half of the delay in Delay Period 2 was allegedly due to delays in the installation of the fire alarm system. (Id. (citing Covanta's CSF ¶ 23).) AE alleged that "Covanta caused at least a two month delay to the fire alarm installation by not providing the project CAD drawings and holding the submittal unreviewed for two months." (Id. (citing Covanta's CSF ¶ 22).) However, Covanta argues that the two-month delay occurred between October 8, 2011 and December 6, 2011. (Id. at 13-14 (citing Covanta's CSF ¶ 23).)

COR 280 also encompassed AE's allegation that the delay was caused

by the increased quantities of 12 types of commodities beyond that which was anticipated by the Contract: conduits, duct banks, ducts, cable trays, 5KV power cables, 600 volt power cables, control cables, instrument cables, lighting, receptacle, grounding, fire alarm system, paging wire power, control and instrumentation, cable terminations, interior light fixtures, and exterior light fixtures.  (Id. at 14 (citing Covanta's CSF ¶ 22; AE First Am. Compl. ¶ 35).)  However, Covanta argues that roughly half of those commodities had been "installed in full or in significant part" by February 1, 2012, and "any such delay must necessarily have occurred before February 1, 2012."  (Id. at 15 (citing Covanta's CSF ¶ 24).)

## STANDARD

Summary judgment is appropriate only where the Court determines that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c) (2010).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).  However, the non-moving party cannot rely upon conclusory allegations

unsupported by factual data to create an issue of material fact.  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

In deciding a motion for summary judgment, the Court's function is not to try issues of fact, but rather to determine whether there are issues to be tried. Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

DISCUSSION

I.      CONTRACT INTERPRETATION

Regarding the interpretation of a contract, the Hawaii Supreme Court has stated that, "[a]s a general rule, the construction and legal effect to be given a contract is a question of law." Koga Eng'g & Constr., Inc. v. State, 122 Hawai'i 60, 72, 222 P.3d 979, 991 (2010) (citations omitted).  "[A]bsent an ambiguity, [the] contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." Id. (some alterations in Koga) (quoting Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 102 Hawai'i 487, 495, 78 P.3d 23, 31 (2003)).  When interpreting a contractual provision, the court's goal is to determine the intention of the parties. Pancakes of Haw., Inc. v. Pomare Props. Corp., 85

Hawai'i 300, 304-05, 944 P.2d 97, 101-02 (Ct. App. 1997). "When the terms of a contract are definite and unambiguous there is no room for interpretation." Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984) (quoting H. Hackfield & Co. v. Grossman, 13 Haw. 725, 729 (1902)). If the parties use language that "leaves some doubt as to the meaning and intention[,]" however, then the court will "apply the rules of construction and interpretation in an effort to ascertain the intention of the parties to the contract." Id.

In construing Hawaii law, the Ninth Circuit has stated, with respect to contractual ambiguity, that:

> [a]n ambiguous term is one susceptible to more than one reasonable interpretation. Port of Portland v. Water Quality Ins. Syndicate, 796 F.2d 1188, 1194 (9th Cir. 1986); MPM Hawaiian Inc. v. World Square, 4 Haw. App. 341, 345, 666 P.2d 622, 626 (an ambiguity exists when there is some doubt as to the meaning of written words), rev'd on other grounds, 66 Haw. 675 (1983). The presence of an ambiguous material term may indicate that no meeting of the minds occurred when the document was signed. 1 Corbin, Contracts § 4.10 (1993); Restatement 2d of Contracts § 20 ("There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and . . . neither party knows or has reason to know the meaning attached by the other. . . .").

Local Motion, Inc. v. Neischer, 105 F.3d 1278, 1280 (9th Cir. 1997).

As a general rule, the Court will look no further than the four corners

of the contract to determine whether an ambiguity exists. <u>State Farm Fire & Cas.</u>
<u>Co. v. Pac. Rent-All, Inc.</u>, 90 Hawaiʻi 315, 324, 978 P.2d 753, 762 (1999) (noting
that the parties' disagreement as to the meaning of a contract does not render it
ambiguous). However, "[u]nder Hawaii law, 'extrinsic evidence . . . [may] be
considered by the court to determine the true intent of the parties if there is any
doubt or controversy as to the meaning of the language embodying their bargain.'
Ambiguity can exist within a contract even if no particular words or phrases are
themselves ambiguous." <u>Metzler Contracting Co. LLC v. Stephens</u>, 774 F. Supp.
2d 1073, 1082-83 (D. Haw. 2011) (quoting <u>Hokama v. Relinc Corp.</u>, 57 Haw. 470,
476, 559 P.2d 279, 283 (1977)).

II.    GENUINE DISPUTES OF MATERIAL
       <u>FACT PRECLUDING SUMMARY JUDGMENT</u>

Covanta argues that Parsons cannot assert any schedule impact claims
arising out of events predating February 1, 2012, the date of Change Order 28.
Covanta further argues that Change Order 28 bars Parsons from asserting claims
based on untimely drawings, COR 287, and COR 280, to include claims based on
late design drawings, additional supervision, and delay or extended overhead, that
were grounded in "schedule impact events" predating February 1, 2012.

Given the factual disputes before it, the Court cannot say that either

Covanta or Parsons is entitled to partial summary judgment on the basis of Change Order 28 and Change Order 14. It is clear to the Court that the parties contracted to exclude certain "schedule impact" claims under Change Order 28. However, the Court cannot determine the effect of Change Order 28, because, as discussed below, there are genuine disputes of material fact regarding the extent to which Parsons's and AE's claims may be encompassed by the change orders, the knowledge that the parties had of the operative claims, and the accrual of the claims. As such, based on the current record before the Court, the issues raised in the Motion are not fit for summary judgment at this time.

A.    Whether the Claims are Covered by Change Order 28

First, the Court finds that there are genuine disputes of material fact concerning whether and to what extent AE's and Parsons's claims in this litigation are, in fact, encompassed by Change Order 28 and Change Order 14.

Covanta argues that "Parsons agreed to accept Covanta's payment under the change order as 'the total compensation due [Parsons], all Subcontractors, and all suppliers, for any schedule impact claims . . . through the date of this Change Order.'" (Mot. at 16 (citing Covanta's CSF ¶¶ 1-5).) It contends that, "[b]y its plain terms, Change Order 28 released all of Parsons's 'schedule impact' claims that arose out of events predating February 1, 2012."

(Id.)  Covanta further argues that the reference to "impact" and "ripple" claims evidences Change Order 28's broad scope.  (Id. at 17.)[3]  It concludes that "[t]here can be no question that Parsons' waiver of all claims, including ripple effect and cumulative impact claims, was intended to waive claims including those for additional supervision, schedule delays, and extend[ed] general conditions related to any event that pre-dated February 1, 2012."  (Id.)

For its part, AE argues that none of the claims it asserts against Parsons in its First Amended Complaint are "schedule impact claims" within the scope of Change Order 28 or Change Order 14.  Rather, AE points to the report of its expert, Joshua Ritti, and argues that "[n]one of the claims asserted herein by AE fall within the scope of the 'schedule' impact claims released in Change Order 28 (or Change Order 14 to the subcontract).  All of these claims are either for

_____

[3] Covanta cites to authority purportedly supporting the broad scope of Change Order 28.  (See id. at 17 (citing AMEC Civil, LLC v. DMJM Harris, Inc., No. CIV.A 06-64 (FLW), 2009 WL 1883985, at *14-15 (D.N.J. June 30, 2009) ("[T]he cumulative impact theory allows the plaintiff to recover all of its losses from a party which whom it is in privity of contract, if it can show that the disruption resulted solely from the defendant's actions."); Jackson Constr. Co., Inc. v. United States, 62 Fed. Cl. 84, 103-04 (2004) ("An impact claim – often characterized using other names, such as 'cumulative impact,' 'ripple effect' . . . is based upon the theory that individual compensable changes to a Contract, taken as a whole, can have such a disruptive effect on the contractor's performance that the contractor has a compensable claim for costs in addition to the amounts of its individual change orders.")).)

increased direct work costs due to changes in the nature of the work or increased

quantities of work, or for delays occurring after the date of Change Order 28."

(AE's Mem. in Opp'n at 5 (citing Declaration of Joshua Ritti ("Ritti Decl.") ¶ 6);

see also Parsons's Mem. in Opp'n at 10 (arguing that "CO #28 does not preclude

recovery of direct costs or expanded general condition costs, such as expanded

supervision.").)

   Relying on Mr. Ritti's declaration, AE differentiates between

"schedule impact claims" and "direct work claims."  It claims that the former is

"one for additional time for performance due to delays, time-related costs for the

extended time of performance, or possibly, costs of acceleration of work to reduce

the time impact."  (AE's Mem. in Opp'n at 5 (citing Ritti Decl. ¶ 5).)   As to the

latter, AE claims that "a direct work claim is one for increased costs due to a

change in the nature of the work to be done, or in the scope or quantity of the work

to be done."  (Id. (citing Ritti Decl. ¶ 5).)  AE thus concludes that the terms of the

change orders relating to "'interruption of schedules, extended overhead costs,

delay, and all impact, ripple effect, or cumulative impact on all other work' are all

attributes or descriptions of 'schedule' impact claims affecting time or costs

associated with extended time of performance.  These terms do not describe

increased direct work costs which are preserved in the next paragraph of the

change order." (Id. (quoting Ritti Decl. ¶ 5).)  As such, AE contends that, because

Change Order 14 does not cover increased direct costs of the work and AE did not

receive consideration for release of any of its direct work claims, Change Order 14

does not bar any of its claims, all of which are direct work claims.  (Id. at 6 (citing

Ritti Decl. ¶ 7; Subcontract).)

AE also argues that COR 287 is not for "extended duration or time-

related cost of supervision, but rather for the increased direct costs of field

supervision to deal with the increased quantities and scope of work, and the

additional added scope of Quality Control procedures."  (Id. at 7-8 (citing Ritti

Decl. ¶ 10).)  AE further contends that its other CORs and claims "are exclusively

for additional direct work costs due to changes in the nature of the work and the

increased quantities of work to be performed, and not for any 'schedule' impact

associated with such direct work increases."  (Id. at 8 (citing Ritti Decl. ¶ 11).)

Based on the facts in the record, the Court cannot say, as a matter of

law, that Change Order 28 and Change Order 14 preclude Parsons's and AE's

claims for relief.  Change Order 28 is meant to remedy "interruption of schedules,

extended overhead costs, delay, and all impact, ripple effect or cumulative impact

on all other work under this Contract." (Change Order 28, Item 4.)  Change Order

28 prohibits Parsons from "fil[ing] any further claim or request for equitable

19

adjustment of any type, for any schedule impact claims[,]" but explicitly states that Parsons "does not waive its rights to seek or claim additional compensation under the Contract for other Change Order Requests . . . for its direct costs . . . ." (Change Order 28, Items 4-5.)

As the Court reads Change Order 28, the waiver of claims does indeed seem to be limited to "schedule"-related impact claims. However, in considering Change Order 28 and the evidence provided by AE in the form of Mr. Ritti's report and declaration, it appears that there are genuine disputes of material fact as to whether the operative claims are indeed "schedule impact claims" within the scope of Change Order 28 and Change Order 14. Covanta's citations to Parsons's project manager's and AE's Chief Executive Officer's deposition testimony are not enough for the Court to decide the intent of the parties on the current record. (See Reply[4] at 10-12.) It may very well be that AE is correct insofar as its claims are

---

[4] Covanta's Reply in Support of Motion for Partial Summary Judgment re Change Order 28 (doc. no. 238), filed March 17, 2015, is in violation of this Court's local rules. Local Rule 7.5(c) provides that "A reply brief or reply memorandum . . . shall not exceed fifteen (15) pages in length, unless it contains no more than half of the words specified for a brief or memorandum in support of or in opposition to a motion and also complies with LR7.5(e)." Local Rule 7.5(c). Local Rule 7.5(b) allows a memorandum in support or opposition to a motion to contain up to 9,000 words. Local Rule 7.5(b). As such, a reply memorandum may not exceed 15 pages or 4,500 words.

"direct work claims" that were specifically preserved under Change Order 28,

rather than the "schedule impact claims" that were waived under the change order.

In any case, there is not enough information before the Court to determine whether

the operative claims are schedule impact claims or direct work claims and whether

there was a true meeting of the minds regarding the scope of Change Order 28.

Because AE raises genuine disputes of material fact regarding whether its claims

are encompassed by Change Order 28 and Change Order 14, the Court cannot

grant summary judgment at this time.[5]

---

Covanta's Reply is 23 pages long. Moreover, Covanta's counsel Lindsay Orman submitted a Certificate of Compliance that stated that the Reply "contains approximately 5,550 words in Times New Roman font, at 14 pitch [and] complies with the word count limitation of L.R. 7.5(b) and (e)." (Reply, Certificate of Compliance (doc. no. 238-4).) In other words, Covanta violated Local Rule 7.5(c) by submitting a brief *eight pages* over the applicable page limit and *1,050 words* over the applicable word limit. Moreover, Covanta violated Local Rule 7.5(e) by certifying that the Reply complies with Local Rule 7.5(c).

The Court strongly cautions Covanta to comply with all applicable rules of court, including the local rules. Covanta's disregard of this Court's rules does not go unnoticed, and the Court will not hesitate to strike noncompliant filings in the future.

[5] The Court previously addressed the issue of the scope of the waiver in Change Order 28 and Change Order 14. In its June 4, 2014 Order Denying Defendant Parsons RCI, Inc.'s Motion for Declaratory Ruling and for Partial Summary Judgment, the Court denied summary judgment and held that "Parsons has not shown that any of the five remaining contested claims are schedule related, and has not presented evidence that this single delay related claim involves delays

At best, there is an ambiguity in the Contract regarding the scope of Change Order 28. In its Reply, Covanta takes the position that Change Order 28 is not limited to merely "schedule impact claims," but encompasses six different types of claims: "interruption of schedules, extended overhead costs, delay, and all impact, ripple effect or cumulative impact on all other work under this Contract." Covanta argues that, "[h]ad the parties meant to address only 'schedule impact claims' then they would have said so. There would have been no need to list the other categories of claims." (Reply at 4.) However, although the various categories are listed within Item 4 of Change Order 28, the specific waiver language does only mention schedule impact claims: "[Parsons] . . . agrees to waive all rights, without exception or reservation of any kind whatsoever, to file any further claim or request for equitable adjustment of any type, for any schedule impact claims . . . ." (Change Order 28.) Whereas Covanta seems to suggest that claims for "interruption of schedules, extended overhead costs, delay, and all impact, ripple effect or cumulative impact" are distinct from "schedule impact claims," AE contends that they are "all attributes or descriptions of 'schedule'

prior to February 1, 2012. Accordingly, a disputed issue of material fact exists as to the relevance of CO28 and CO14 to the claims presently in dispute." (Doc. no. 76.) Although the factual record has become somewhat more fleshed out in the ten intervening months, there are still genuine disputes of material fact precluding summary judgment.

impact claims affecting time or costs associated with extended time of performance." (AE's Mem. in Opp'n at 5 (citing Ritti Decl. ¶ 5).) Thus, given the vague language and conflicting interpretations, the Court holds that there is an ambiguity as to the scope of the waiver in Change Order 28. Because it is unable to determine the intent of the parties, summary judgment is inappropriate on the current record.

Furthermore, regarding the scope of Change Order 28, as Parsons points out, Covanta appears to expand the reach of Change Order 28 by asserting that it bars claims "***related to any event*** that pre-dated February 1, 2012. (Mot. at 17 (emphasis added).) The Court does not find any language in Change Order 28 that would suggested that Parsons broadly waives schedule impact claims merely "related to" an event, much less ones related to "any event." Rather, the plain language of Change Order 28 provides that the waiver extends to "***any schedule impact claims***, known or which [Parsons] should have known about using reasonable diligence and as to which [Parsons] should have provided notice of claim under the Contract . . . ." (Change Order 28 (emphasis added).) Thus, the Court cannot say that Change Order 28 is so broad so as to encompass claims "related to any event" prior to February 1, 2012.

B.  <u>Whether the Parties had Knowledge of the Claims and Their Accrual</u>

Second, there are genuine disputes of material fact regarding the parties' knowledge of the claims.  There are also related questions of material fact regarding the accrual of the claims.

As to the parties' knowledge of the claims, Parsons argues that it only agreed to waive its rights as to "schedule impact claims that were actually 'known or which [Parsons] should have known about using reasonable diligence **and** as to which [Parsons] should have provided notice of claim under the Contract through [February 1, 2012].'"  (Parsons's Mem. in Opp'n at 8 (quoting Change Order 28, Item 4) (emphasis in original).)  It argues that the Motion overstates the scope of Change Order 28, as the language is not so broad so as to encompass, as Covanta argues, "any and all claims of whatever kind or nature . . . arising or relating to events prior to February 1, 2012.  (<u>Id.</u> at 9 (quoting Mot. at 2).)  Rather, "[i]t was clearly the intent of the parties to preserve all existing claims, all unknown claims, and all claims not requiring notice before February 1, 2012."  (<u>Id.</u> at 10.)  Parsons contends that "Covanta cannot be granted any relief regarding schedule impact claims where it does not conclusively establish that Parsons actually knew of *all events* giving rise to such claims and failed to preserve those claims."  (<u>Id.</u> at 11 (emphasis in original).)

Regarding COR 287, Parsons argues that, although the work may have occurred in 2011, the COR is "based on information provided over a year after execution of CO #28 and does not establish that any claim was known before February 1, 2012." (Parsons's Mem. in Opp'n at 15.) Furthermore, Parsons argues that, although issues may have arisen on the Project site before February 1, 2011, those issues did not necessarily give rise to a claim before the execution of Change Order 28. (Id.) By way of example, Parsons argues that the first written notice for extended supervision or overhead was in a letter dated September 5, 2012 and continued through February 21, 2013. (Id. (citing Parsons's CSF ¶¶ 3, 5, 13).)

Parsons points out that COR 287 was not provided by AE to Parsons until February 21, 2013. (Id. at 16 (citing Parsons's CSF ¶ 13).) Parsons argues that COR 280 was not provided to Parsons until December 20, 2012. (Id. at 15-16 (citing Parsons's CSF ¶ 14).) Thus, Parsons "had no earlier written notice of these claims and was not initially provided enough information by AE to substantiate the claims." (Id. at 16.) Parsons further argues that "[m]ere statements that issues were 'discussed onsite' do not come close to establishing actual knowledge of claims or the date such claims were known by Parsons." (Id.)

In response, Covanta argues that Parsons was on actual notice of COR

287 and COR 280 before February 1, 2012, even though those change order requests were submitted after Change Order 28 went into effect. (Reply at 20-22.) Regarding COR 287, Covanta contends that AE twice communicated its concerns to Parsons regarding delays caused by alleged design revisions and poorly coordinated drawings prior to February 1, 2012. (Id. at 20 (citing Covanta's CSF ¶ 9).) It also argues that AE submitted six revisions to its quality control plan through August 5, 2011 and openly discussed the impacts of the out-of-sequence mechanical work onsite with Parsons and Covanta through fall 2011. (Id. at 21 (citing Covanta's CSF ¶¶ 18, 20).) Regarding COR 280, Covanta argues that the delay resulting from the installation of a fire alarm system occurred between October 8, 2011 and December 6, 2011, well before Change Order 28 went into effect. (Id. at 21-22 (citing Covanta's CSF ¶ 23).)

Based on the above arguments, the Court agrees with Parsons, insofar as Covanta has not shown that Parsons had actual or constructive knowledge of the claims on which it seeks summary judgment at the time the parties agreed to Change Order 28. Change Order 28 provides that Parsons waived any schedule impact claims that were "known or which [Parsons] should have known about using reasonable diligence and as to which [Parsons] should have provided notice of claim under the Contract through the date of this Change Order." (Change

Order 28.)  Based on the parties' submissions, where Parsons claims that it did not have knowledge of the operative events and claims prior to February 1, 2012, the Court cannot say, as a matter of law, that Parsons had the requisite knowledge of the claims at issue.  The Court agrees with Parsons that, even though the various problems on the Project worksite may have been known to the parties, the impact and extent of those problems or the existence of "schedule impact claims" may not have been known.  As such, there are questions of material fact regarding the parties' knowledge of the schedule impact claims that are encompassed by Change Order 28 and time when such claims accrued.

Moreover, according to AE, COR 280 "is not based on any delay occurring or arising prior to Change Order 28 . . . .  Rather, both Delay Period 1 and Delay Period 2 in this [case] are for delays due to changes or other actions after February 1, 2012 which then impacted the new schedule milestones . . . ." (AE's Mem. in Opp'n at 7 (citing Ritti Decl. ¶ 9).)  Conversely, Covanta argues that Delay Period 2 was caused by a two-month delay in late 2011.  (Mot. at 13-14.)  Neither party provides the Court with sufficient information to determine the cause and impact of Delay Period 2.  Given this factual discrepancy, the Court is unable to determine whether the claims related to Delay Period 2 arose before February 1, 2012 and are thus barred by Change Order 28.

Furthermore, in its Reply, Covanta argues that, if Parsons had actual knowledge of a claim, "it is irrelevant whether Parsons separately should have submitted a claim to Covanta under the General Contract." (Reply at 15.) It argues that Parsons only needed to provide notice of a claim if it had constructive notice. Change Order 28 provides that Parsons waived "[a]ny schedule impact claims, known or which the Contractor should have know[n] about using reasonable diligence and as to which Contractor should have provided notice of claim . . . ." (Change Order 28.) Covanta contends that, because Change Order 28 omits a comma between "diligence" and "and," the phrase "and as to which Contractor should have provided notice" modifies only claims that Parsons "should have known about," rather than also modifying claims that Parsons "knew" about.[6] (Reply at 15.) It argues that Parsons thus waived schedule impact claims (1) that were known or (2) which Parsons should have known about using reasonable diligence and as to which Parsons should have provided notice of claim.[7] (Id.)

---

[6] Under Covanta's interpretation, if Change Order 28 contained an additional comma such that it provided that Parsons waived "scheduling impact claims, known or which the Contractor should have know[n] about using reasonable **diligence, and** as to which Contractor should have provided notice," then the phrase "and as to which Contractor should have provided notice" would also modify "known."

[7] In other words, Covanta interprets Change Order 28 to waive claims of

The Court cannot say that the notice of claim provision only applies to Parsons's constructive knowledge and not to its actual knowledge. The placement or non-placement of a comma in a provision containing other grammatical mistakes might, at best, indicate that there is an ambiguity in Change Order 28 regarding Parsons's duty to provide notice of claim under the Contract. The Court is unable to determine the intent of the parties requiring the notice of claim provision, and summary judgment is thus inappropriate based on the current record.

Therefore, there are genuine issues of material fact regarding the parties' knowledge of the schedule impact claims and the accrual of those claims. Although Covanta has provided some evidence that certain facts were known to the parties prior to Change Order 28, the evidence is insufficient to establish that Parsons's and AE's claims are barred by Change Order 28 and Change Order 14. Accordingly, the Court DENIES summary judgment.

<u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES the Motion and Partial Joinder. While the Court agrees with Covanta that the parties obviously contracted

which Parsons had actual knowledge as of February 1, 2012. Change Order 28 would also waive the claims of which Parsons had constructive knowledge ***and*** for which it should have submitted a claim.

to bar certain "schedule impact claims," the Court cannot determine, based on the

current record before it, which claims are barred and to what extent those claims

may be barred by Change Order 28 and Change Order 14. The Court holds that

there are genuine issues of material fact regarding the claims encompassed by

Change Order 28 and Change Order 14, the parties' knowledge regarding the

claims, and the accrual of the various claims. Accordingly, summary judgment is

DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 30, 2015.



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

American Electric Co., LLC v. Parsons RCI, Inc., CIV. NO. 13-00471 BMK, CIV. NO. 14-00020 BMK (Consolidated), ORDER DENYING (1) COVANTA HONOLULU RESOURCE RECOVERY VENTURE'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE CHANGE ORDER 28 (Doc. no. 190) AND (2) PARSONS RCI, INC.'S LIMITED JOINDER TO COVANTA HONOLULU RESOURCE RECOVERY VENTURE'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE CHANGE ORDER 28, FILED JANUARY 30, 2015 (Doc. no. 202)